## W. H. MANSER v. MARY E. COLLINS.

### No. 13,601.   (76 Pac. 851.)

#### SYLLABUS BY THE COURT.

1. PHYSICIANS AND SURGEONS—*Liability for Failure to Discover Dislocation and Fracture.*   A physician is answerable in damages for a failure to discover a serious dislocation of a patient's shoulder and a fracture of an arm when there was a reasonable opportunity for examination and the dislocation and fracture could have been ascertained by the exercise of ordinary care.

2. ———— *Mental Suffering a Proper Element of Damages.*

Manser v. Collins.

Mental suffering naturally attending, and incident to, physical pain, prolonged by the failure of a physician to discover the seat of a bodily injury, is a proper element of damages in cases mentioned in the preceding paragraph.

Error from Cowley district court; JAMES LAWRENCE, judge. Opinion filed May 7, 1904. Affirmed.

### STATEMENT.

THIS was an action against a physician for malpractice. Plaintiff below, Mary E. Collins, was thrown against the side of a barn .by a vicious horse which she was trying to hold, and sustained a fracture of the left elbow and shoulder and a downward dislocation of the right shoulder. She was sixty years old at the time. On the day of the accident she called in Doctor Manser, plaintiff in error, who, according to the testimony of plaintiff and another woman who was present, made a very indifferent examination of the affected arms. He told the patient that they were simply bruised and left her some liniment and morphine tablets, after injecting the left arm hypodermically with morphine. This was on May 18, 1900. The plaintiff told the doctor that her arms felt as though they were paralyzed. She testified that she was in a "rage of misery"; that her arms were discolored but not swollen; that the doctor pushed up her sleeve far enough to put an injection in the arm. Plaintiff was in great pain for three days afterward, and again called in the doctor on May 22, and told him of her suffering. On this visit he did not examine the bruised limbs. He stayed about fifteen minutes and left some morphine tablets like the first. At the second visit her right arm was much swollen. After this he was again sent for but was absent from town. On the 26th day of the month another physician, Doctor Musgrave, was

called, and found the patient vomiting and in much pain. He applied hot cloths to the affected parts and used liniment to reduce the swelling. On June 9 Doctor Musgrave again called and advised plaintiff to go to Winfield and have her arm treated by a competent surgeon. This was not done, however. At the time of the trial, in November, 1902, plaintiff suffered pain in her arms, not constantly, but at intervals, and was unable to raise them to her head.

The negligence charged in the petition against defendant below was that he had failed and neglected to ascertain the dislocation of the right arm and fractures of the shoulder and left elbow when the same were easily discoverable by the exercise of ordinary care and attention ; that he wholly failed to treat said injuries ; and that the dislocation and fractures were not discovered until another physician was called. The answer was a general denial, with an allegation of contributory negligence on plaintiff's part.

In answer to particular questions of fact the jury found that defendant below did not exercise the care and attention ordinarily used by physicians in that locality to discover the nature of plaintiff's injuries and to treat her therefor ; that he did not make a thorough examination ; that his attention was called to the injury to the right shoulder ; that he was not discharged from the case before he had had a reasonable opportunity to discover the nature of plaintiff's injuries ; that plaintiff's injuries consisted of a fracture of the elbow, fracture of the shoulder-blade, and dislocation of the shoulder ; that the nature and extent of plaintiff's injuries could have been determined and discovered by a physician of ordinary skill and ability at the time Doctor Manser was first called, and at any time thereafter up to June 9, 1900 ; that if the nature

and extent of the injuries had been discovered by defendant they could have been cured or remedied so that her condition would have been improved, and she would have been relieved from bodily pain.   The following answers were also returned by the jury :

"19th.   In what sum, if any, was the plaintiff damaged by reason of bodily pain suffered from the failure of the defendant to discover the nature of the injury to the left elbow ?   A.   $100.

"20th.   In what sum, if any, did the plaintiff suffer damage by reason of bodily pain suffered from the failure of the defendant to discover the nature of the injury to the right shoulder.   A.   $100.

"21st.   What sum would compensate the plaintiff for the mental anguish, if any, suffered by her by reason of the failure of the defendant to discover the nature of the injury to her left elbow ?   A.   $200.

"22d.   What sum would compensate the plaintiff for the mental anguish, if any, suffered by her by reason of the failure of the defendant to discover the injury to her right shoulder.   A.   $250."

A general verdict was returned in favor of the plaintiff below for $650, and judgment was entered for that amount by the court.   Defendant complains of error committed by the court below.

*Jackson & Noble*, for plaintiff in error.

*S. A. Smith*, and *J. E. Torrance*, for defendant in error.

The opinion of the court was delivered by

SMITH, J. : Nearly all of the brief of counsel for plaintiff in error is devoted to the contention that the verdict of the jury was contrary to the evidence and should have been set aside by the trial court.   We have read the testimony on both sides of the controversy, and while it does not strongly preponderate in

favor of plaintiff below yet we are not prepared to
say that there was no evidence to justify the result.
Doctor Tandy, a disinterested witness, testified that in
like cases the practice among members of his profes-
sion, when first called, is to take hold of the afflicted
part to ascertain the cause of the injury, and that ex-
cruciating pain suffered by the patient should impel
a physician to seek knowledge of a dislocation; that
great pain and a feeling of paralysis in the limbs
would impose the duty of making some examination
to determine the seat of the trouble. He further
testified that it was difficult to locate a dislocation or
fracture; that in such cases a surgeon ought to make
a careful examination, if the parts are in a condition
so that it can be done; that the pain would be alle-
viated by reducing the dislocation at the time; that
there would be much unnecessary suffering if proper
relief were not administered for ten or eleven days.
Doctor Forney, another physician, testified that in
his judgment a dislocation of the right shoulder
ought not to be overlooked by a skilled physician, if a
close examination were made. There was testimony
showing that when Doctor Manser was called there
was no swelling in the arms.

Upon cross-examination of Doctor Emerson, an ex-
pert who testified for the defendant below, responses
were extracted from him from which the jury might
infer that the treatment of Mrs. Collins by Doctor Man-
ser evidenced a negligent failure to discover the true
cause of her suffering. The matter rested largely on
the opinion of physicians having experience in the
treatment of such cases. It is true, as contended by
plaintiff in error, that a physician is required to
possess a reasonable degree of learning and skill only;
that the exercise of ordinary care and diligence will

exempt him from liability; and that he is not responsible for errors of judgment in matters of reasonable doubt. (*Erastus Tefft v. Hardin H. Wilcox*, 6 Kan. 46.) The court so instructed the jury, and the sole question involved was whether the conduct of defendant below in his treatment of the patient showed a breach of professional duty, within the rule stated. It was the claim of defendant that Mrs. Collins did not apprise him of any injury to her right arm and shoulder, and that after examination he discovered nothing but a bruise on the left arm which caused some discoloration; that he injected morphine into that, but did not treat the other arm at all. It will be seen from this that there was direct conflict between the testimony of plaintiff and that of defendant.

Defendant below was a physician of eighteen years' practice, which fact it is presumable that plaintiff knew when she called him. It was his duty to use reasonable care to ascertain the seat of his patient's trouble. It was to be expected that he would treat the disorder itself and not the symptoms of it. For neglect to exercise reasonable skill in ascertaining the source of her distress defendant below was held liable. There can be no doubt that physicians and surgeons in such cases must respond in damages if their carelessness result in injury to the patient. In *Burk v. Foster*, 69 S. W. (Ky.) 1096, 59 L. R. A. 277, a physician was held liable for a failure to discover a dislocation of the arm at the shoulder joint. He was called in to attend the injured person within an hour after an accident. As a consequence of his neglect, the muscles of the patient's arm atrophied, the shoulder joint became stiffened, and the arm practically useless. The court said:

"In this case the patient was entitled to an ordina-

rily careful and thorough examination of his injuries, such as the circumstances attending their infliction, the condition of the patient and the surgeon's opportunities for examination suggested and allowed. If the dislocation was discoverable by such examination, and if the physician felt that because of lack of appliances or lack of experience he was unable to treat any peculiar feature of the injury, it was at least the right of the injured man to be apprised of his condition, that he might call in more skilled attention, if he desired.''

(See, also, *Carpenter v. Blake*, 75 N. Y. 12; *Langford v. Jones*, 18 Ore. 307, 22 Pac. 1064; *Lewis v. Dwinell*, 84 Me. 497, 24 Atl. 945.)

The question of contributory negligence charged to the plaintiff below was submitted to the jury under proper instructions.

It is contended that, if the neglect of Doctor Manser be conceded, his patient suffered mental distress only, for which no recovery can be had. Doctor Tandy testified that if the joint or dislocation had been reduced in time the intense pain which plaintiff suffered would have been lessened; that unnecessary pain would result from a delay of ten or eleven days. It may be said that the failure of the doctor to alleviate the patient's suffering was the cause of it, at least, to the excess above a minimum to which it might have been reduced after prompt discovery of the cause and by proper treatment. To that extent he caused her physical harm by a negligent omission to exercise reasonable skill. Where mental suffering is an element of physical pain, or a consequence of it, damages for it may be recovered. Mental suffering, however, resulting from the injury which arises in the mind but is not a part of the pain naturally attendant upon, and connected with, the injury, cannot be regarded as an

element of damage.   (*City of Salina v. Trosper*, 27 Kan. 544; 1 Suth. Dam., 3d ed., 275; *Chicago City Ry. Co. v. Taylor*, 170 Ill. 49, 48 N. E. 831.  See, also, *Lathrop v. Flood*, 63 Pac. [Cal.] 1007.)

The present case does not fall within the rule announced in *Railroad Co. v. Dalton*, 65 Kan. 661, 70 Pac. 645.

The judgment of the court below will be affirmed.

All the Justices concurring.