HATTIE WILLARD *v.* E. F. NORCROSS.

May Term, 1908.

Present: ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

Opinion filed May 29, 1908.

*Physicians and Surgeons—Action for Malpractice—Evidence—*
*Degree of Skill Required—Subjects of Expert Testimony—*
*Rebuttal—Remarks of Counsel.*

In an action against a physician for malpractice in the treatment of plaintiff's wrists, where the issues were whether plaintiff had suffered a sprain or a fracture, and whether defendant had treated the case skilfully, plaintiff was entitled to show, as bearing on

the character and extent of her injury, the condition of her hand and fingers the night after the accident when defendant first examined her wrists, and to state whether she was then able to move her hand or any of her fingers.

In an action against a physician for malpractice in the treatment of plaintiff's wrists which were injured in December, where the issues were whether plaintiff had suffered a Colle's fracture or only a sprain, and whether defendant treated the case skilfully, testimony that in the following May plaintiff showed defendant her wrists and asked him what she should do, to which he answered, "come up to my barn and milk my cows, and do my chores, and you will be all right," and that plaintiff then said that her wrists pained her so that she was almost insane, to which defendant answered, "Good, good enough," was admissible as indicating that the relation of physician and patient still continued between them, and as bearing on the question whether defendant properly diagnosed and treated the injury.

In an action against a physician for malpractice, the standard by which defendant's treatment is to be tested is ordinary care, such as physicians and surgeons in the same general neighborhood and in the same general lines of practice ordinarily have and exercise in like cases.

In an action against a physician for malpractice in the treatment of what plaintiff claimed was a Colle's fracture, a physician duly qualified as an expert was properly allowed to testify as to whether he considered the prescribing horse liniment good surgery in such cases.

In an action against a physician for malpractice in the treatment of plaintiff's wrists, where the issue was whether plaintiff had suffered a fracture or a sprain, plaintiff's witness was properly allowed to testify as to what occurred after the accident and before defendant saw plaintiff, and that plaintiff then complained of pain in her wrists; as plaintiff's condition and complaints of pain tended to show the severity of her injury.

Plaintiff's witness was properly allowed to testify that, after plaintiff's wrists had been examined by experts during the trial, her wrists were disfigured and swollen, and that she complained of pain in them, she having claimed that, because of defendant's treatment, her wrists still caused her pain, and the fact that the

experts had so examined and manipulated them not being with-
held from the jury.

In an action against a physician for malpractice in the treatment of
plaintiff's wrists, an issue was whether plaintiff had suffered a
Colle's fracture or only a sprain, and defendant showed, by his
cross-examination of plaintiff that, before the first trial of the
case, she had her wrists examined and x-ray photographs made
thereof; that the physician examining her told her that he was
unable to discover by the x-ray that her wrists had been frac-
tured; and that she did not produce that physician as a witness
in the first trial, nor use the photographs, but had kept the mat-
ter secret. On the second trial defendant objected to plaintiff's
testimony that since the controversy arose defendant had plain-
tiff's wrists examined by certain physicians, whereupon plaintiff's
counsel stated that they expected to show that another examina-
tion was made by defendant's experts when the case was first
tried, and that the physicians making the examination testified
that plaintiff had suffered a Colle's fracture, and offered to show
that this was the reason the photographs were not introduced,
and as tending to show a shift of his defence, if defendant did
not call those physicians as witnesses. The court twice warned
the jury to disregard the statements of counsel, and also sug-
gested to plaintiff's counsel not to anticipate that line of defence,
but to meet it in rebuttal, which suggestion was adopted. *Held*
that, in the circumstances, the remarks of plaintiff's counsel were
not subject to exception, being made in explanation of plaintiff's
failure to produce the photographs, and to prevent an unfavor-
able inference therefrom.

Defendant having testified that he made an arrangement by which
plaintiff went to board with a certain person and remained there
four weeks during which time he visited plaintiff almost daily,
giving directions as to her care which he saw fulfilled, it was
not reversible error to allow the overseer of the poor to testify
that he made part of the arrangement for plaintiff's board.

A physician called by defendant having testified that plaintiff had
not suffered a Colle's fracture, that, on examination he found her
wrists normal, and that an exhibit, an x-ray photograph of
plaintiff's wrists, was a picture of normal wrists, testimony of
a physician called by plaintiff that the exhibit did not represent

a normal wrist was properly admitted in rebuttal, and was not objectionable as raising a new issue, not as being merely cumulative.

CASE for malpractice. Plea, the general issue. Trial by jury at the March Term, 1907, Essex County, *Taylor,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*J. W. Redmond,* and *Dunnett & Slack* for the defendant.

It was error to allow plaintiff's expert to state whether the use of horse liniment is good surgery; "Good surgery" is not the standard by which to test defendant's treatment. *Hathorn* v. *Richmond,* 48 Vt. 557; *Sills* v. *Brown,* 9 Carr & Payne 601; *Buxton* v. *Somerset Potters Works,* 121 Mass. 446.

*Herbert W. Blake,* and *Howe & Hovey* for the plaintiff.

The history of the injury from the time of the fracture to the time of the trial, the treatment it had received, and the results thereof, whether beneficial or injurious, were calculated to throw light upon the question of liability and upon the question of damages. *Sheldon* v. *Wright,* 80 Vt. 304.

It was proper to allow plaintiff's expert witness to testify that the prescribing of horse liniment for Colle's fracture was not good surgery. *Wilmot* v. *Howard,* 39 Vt. 447.

There was no error in the admission of the testimony of Mrs. Hodson as to complaints made by the plaintiff of then existing pain. *Bagley* v. *Mason,* 69 Vt. 175; *Hawkes* v. *Chester,* 70 Vt. 271.

It is the rule in this State that the trial court may so deal with an improper argument or statement of counsel that no exception will lie, and it is impossible to conceive how any remark could be dealt with more promptly and adequately than was done in this case, as shown by the record. *Currier* v. *Robinson's Est.;* 61 Vt. 196; *Smith Woolen Machine Co.* v. *Holden,* 73 Vt. 396; *State* v. *Young,* 74 Vt. 478; *McDonald* v. *The People,* 9 Am. St. Rep. 569; *Kilpatrick* v. *Grand Trunk Ry. Co.,* 74 Vt. 288.

Tyler, J.  The first question in issue was whether the plaintiff had suffered an impacted "Colle's fracture" or a severe sprain, and another question followed it, namely, whether or not the defendant treated the case with the skill required of a physician and surgeon.  The plaintiff claimed, and her evidence tended to show, that the injury consisted of a fracture of the radius, and that if it were only a sprain, the defendant treated it unskilfully.  On the other hand the defendant claimed and his evidence tended to show that the injury was a sprain only, that his treatment of the case was skilful—that it was skilful if the injury were a fracture.

1.  The plaintiff's counsel inquired of her whether, after the defendant made the first examination of her wrists the night after she was injured, she was able to move her hand or any of her fingers, and she answered no.  The objection to the question was that it ingeniously connected the defendant and his first visit with the plaintiff's pitiable condition that night, as if to lay the blame to him when he was not responsible for her condition.  As bearing upon the character and extent of her injury it was competent to show the condition of her hand and fingers the night after the accident.

2.  The accident occurred in December 1902.  In the following May the plaintiff met the defendant and showed him her wrists and asked him what she should do, to which he replied, "Come up to my barn and milk my cows and do my chores and you will be all right."  The plaintiff said to him that her wrists pained her so that she was almost insane, to which he replied:  "Good, good enough."

Counsel make a question whether this interview between the parties was had while the relation of physician and patient continued between them.  The plaintiff's question, asking advice and the defendant's answer, giving it, indicated that they both understood that the relation still existed.  The answer seems frivolous, yet the defendant may have meant that the plaintiff should exercise her wrists, which was consistent with his theory that they were only sprained.  All his conduct in relation to his treatment of the case was a proper subject of inquiry as bearing upon the question whether he diagnosed and treated it skilfully.  The admission of this evidence cannot be held reversible error.

Exceptions 3 and 4 are not briefed by the defendant.

5. The plaintiff's evidence tended to show that on the defendant's first examination he was asked whether liniment would be a good application, and that he answered, "Yes, use horse liniment, or any old thing"; that the defendant set no bones, prescribed no medicine, bandages, nor application of any kind except said liniment.

Dr. Van Allen was called by the plaintiff as an expert witness and duly qualified as such. He was asked whether he considered the prescribing of horse liniment good surgery in case of Colle's fracture, and he answered, subject to the defendant's exception, that it was not good surgery. One objection to the question was that in answering it the witness must assume the province of the jury. It is true that the rule by which the defendant's treatment of the case was to be tested was that of ordinary skill, such skill as physicians and surgeons in the same general neighborhood, in the same general line of practice, ordinarily have and exercise in like cases. *Hathorn* v. *Richmond*, 48 Vt. 557; *Mullen* v. *Flanders*, 73 Vt. 97, 50 Atl. 813; *Sheldon* v. *Wright*, 80 Vt. 298, 67 Atl. 807. Upon this question physicians and surgeons of practice and experience are experts, and their opinions are admissible in evidence upon questions that are strictly and legitimately embraced in their profession and practice. Whether the defendant's treatment was good surgery or proper treatment, whatever the nature of the injury, was a question upon which the witness was competent to testify.

As to the other objection, the plaintiff was trying her case upon the claim that she had sustained a fracture and Dr. Van Allen so testified. It does not appear by the exceptions where the witness resided nor that he did not testify from his knowledge of the practice of physicians and surgeons of ordinary skill in that general neighborhood.

6. Mrs. Hodson, a witness called by the plaintiff, testified under the defendant's exception, to what occurred after the accident and before the defendant saw her and that she complained of pain in her wrists. The objection to this evidence was that it did not tend to throw any light upon the nature of the injury and because the complaints were made

before the defendant's arrival. As the plaintiff's condition and complaints of pain tended to show the severity of her injury we think that this evidence could not have been properly excluded.

7. Mrs. Hodson was also permitted to testify, subject to the defendant's exception, that after the plaintiff's wrists had been examined by the medical experts and she had returned from the court-house to her room, her wrists were disfigured and swollen and that she complained of suffering pain from them. This evidence was admitted to corroborate the plaintiff's claim as to the condition of her wrists at the time of the trial. The specific objection to this evidence was that the then condition of the wrists was due to the manipulation of the surgeons. It must be borne in mind, however, that the defendant was charged with malpractice; that the plaintiff claimed that by reason of unskilful treatment her wrists still caused her suffering. In this view it was competent for her to show their condition at any time before or during the trial. The fact was not withheld from the jury that the experts had recently manipulated them, and there was no occasion for their being misled.

8. This exception cannot be better stated than by quoting from the record:

"On direct examination, in the opening of her case, the plaintiff testified, the court ruled, and the defendant objected and excepted, as follows:

Q. I wish you would tell the number of different doctors that Dr. Norcross has had examine your wrists since this controversy arose.

A. There was Dr. Steming of Coaticook, Dr. Potter of East Charleston.

Mr. Redmond: The examinations of her wrists are immaterial. We object to this line of evidence as being wholly immaterial, any evidence of prior examinations; whatever examinations were made, were made with her consent; nobody claims the contrary.

Mr. Howe: We expect to show that another examination was made at the time this case was tried before with the same result and same effect upon the plaintiff; that that examination was made by Dr. Mitchell and Dr. Leith of Lancaster and by

Dr. Allen, a very eminent surgeon of St. Johnsbury, and these doctors testified before and all three testified that she received a Colle's fracture.

Mr. Redmond: We object to Mr. Howe pursuing this matter further and ask for an exception to the remarks already made.

Mr. Howe: Instead of changing our position or making any change of witnesses I offer to show by these witnesses that was the reason the pictures were not introduced and as tending to show a shift of this defence if they don't call Drs. Mitchell and Leith and Allen, which it seems they are not intending to do.

Mr. Dunnett: I think we should be allowed an exception to the statement made by Mr. Howe in the presence of the jury. It must be perfectly obvious that no such statement could be made in good faith. Exception allowed.

The defendant had shown by his cross-examination of the plaintiff that before the first trial of this case in the county court she had consulted Dr. T. R. Stiles of St. Johnsbury, had him examine her wrists by the X-Ray, and he and a Mr. Clark had made X-Ray photographs of her wrists; that Dr. Stiles told her at that time that he was unable to discover by the X-Ray that her wrists had been fractured; and that he did not think they had been; that she did not produce Dr. Stiles or use him as a witness in the first trial, nor had she used the photographs in the first trial, but had kept that matter secret during the first trial.

Court to Defendant: Do you expect to argue against the plaintiff on account of the non-production of the photographs?

Mr. Redmond: No, your Honor, we shall not, we shall argue merely, we expect to argue on some evidence we shall put in later, they were informed by the physician they employed to make this examination, and that physician was present when that photograph was taken.

Mr. Howe: They have proved it, that the photographs were not produced on the cross-examination of our witness; now we insist as explaining that fact, whether they choose to argue it or not, it may have an unfavorable inference and we have a right to clear that matter up with this explanation."

During this colloquy between counsel the court twice said to the jury that the statements of counsel were not in the case

and should be wholly disregarded by them. The court also suggested to the plaintiff's counsel not to anticipate this line of defence but meet it in rebuttal, which suggestion seems to have been adopted.

We think that, in the circumstances, the remarks of the plaintiff's counsel were not subject to exception. They were made, as the counsel said, in explanation of the fact of the plaintiff's not producing the photographs and to prevent an unfavorable inference being drawn from that fact. They were made to meet a position taken by the defendant and for this purpose they were justifiable.

10. The defendant deemed it of some importance to testify that he made an arrangement by which the plaintiff went to board with Mrs. Renel in Island Pond and that she remained there four weeks; that while she was there he visited her almost daily, gave Mrs. Renel directions as to her care of the plaintiff and that he saw that his directions were fulfilled. We can conceive of no purpose that this evidence could serve other than to show the defendant's attention to and care for the plaintiff, and to meet the plaintiff's claim that he was indifferent about her case. It certainly was not reversible error for the court to allow Mr. Clark, the overseer of the poor, to testify that he made part of the arrangement with Mrs. Renel.

11. Dr. Johnson, a witness called by the defendant, had testified that the plaintiff had not suffered a Colle's fracture, that upon examination he found her wrists in a normal condition in every respect; that exhibit 7, an X-Ray photograph of the plaintiff's wrists, was a picture of normal wrists. Exhibit 10 was shown the witness and he testified that it represented a normal wrist and that there was no more difference between them than between any two normal wrists. Dr. Smith, called in rebuttal, was permitted to testify that No. 7 did not represent a normal wrist, that it showed that a small portion of the styloid process of the radius of one wrist was broken off, and that there was a gradual expansion in the lower end of the radius in the normal bone, while in the abnormal the slant was more abrupt. This evidence was objected to on the ground that it was not rebutting and was admitted under exception.

The testimony of Dr. Smith did not raise a new issue, nor was it subject to the objection that it was merely cumulative

evidence. It was offered and admitted to directly contradict the testimony of Dr. Johnson and was within the definition of rebutting testimony as given in our cases cited in the plaintiff's brief.

*Judgment affirmed.*