HAROLD RANN *v.* M. C. TWITCHELL, ET AL.

October Term, 1906.

Present:  ROWELL, C. J., TYLER, MUNSON, HASELTON, POWERS, and MILES, JJ.

Opinion filed February 18, 1909.

*Physicians and Surgeons—Malpractice—Specialists—Care Required—Question for Jury.*

Where one holds himself out as a specialist in the medical and surgical treatment of a particular organ, injury or disease, and is employed as such, although he is not to be judged by the result of his treatment, nor held liable for an error of judgment, yet he is bound to have and exercise such skill and knowledge in diagnosis and treatment as is ordinarily possessed by those who, in the same general locality, devote special study and attention to a particular organ, injury, or disease, its diagnosis and treatment.

In a suit for malpractice in the diagnosis and treatment of plaintiff's eye, evidence considered, and *held* to show that defendant held himself out as a specialist in the medical and surgical treatment of the eye, and as such was employed to treat plaintiff's injury.

Plaintiff was injured by the fragment of an exploded railroad torpedo striking him under the inner corner of the eye, and cutting the lower lid so that it hung down over the cheek, disclosing a wound under the eyeball into the socket. He was taken to a local physician who treated the injury for a week, and who thereupon became convinced that there was a foreign substance in the eye or socket, and sent plaintiff to defendant, an eye specialist. Whether there

was a foreign body in the eye could have been safely determined by the use of a probe, but defendant made only an external examination, made no effort to learn anything further of the history of the case, gave the eye attention for a few days and then sent plaintiff home, assuring him that there was nothing in the eye, which, on plaintiff's return home, grew steadily worse, until his original physician operated on it and removed a piece of tin nearly an inch long and half an inch wide, which was buried in the tissues. *Held*, that defendant could not be said as matter of law to have exercised the care required of him as a specialist in diagnosing and treating the injury.

CASE for malpractice in diagnosing and treating an injury to plaintiff's eye. Each defendant severally pleaded the general issue. Trial by jury at the March Term, 1906, Orleans County, *Watson*, J., presiding. Before the plaintiff finished his evidence, and at his request, judgment was rendered for defendant, the Mary Fletcher Hospital, to recover its costs, and the trial proceeded against defendant Twitchell alone. At the close of all the evidence the court ordered a verdict in favor of defendant Twitchell, on the ground that there was no evidence of any shortage of duty on his part, to which the plaintiff excepted. The opinion states the case.

*Cook* and *Williams* for the plaintiff.

It is for the jury to say: "whether a physician in making a diagnosis uses ordinary care and skill; whether the omission of certain treatment was or was not negligence; whether or not there was such negligence or unskilfulness as to entitle the plaintiff to damages; whether the physician has exercised reasonable care in the case; whether or not the treatment was negligent and unskilful; and it is for the jury to decide upon all the evidence what treatment amounts to negligence under the rule of skill required. *Harriot* v. *Plimpton*, 166 Mass. 585; *Carpenter* v. *Blake*, 60 Barb. 488; *Rowe* v. *Lent*, 42 N. Y. S. R. 483; *Barton* v. *Govan*, 4 N. Y. S. R. 876; *Olmstead* v. *Gene*, 100 Pa. 127; *Hewit* v. *Eisenbart*, 36 Neb. 794; *Landon* v. *Humphrey*, 9 Conn. 209; *Lewis* v. *Dwinell*, 84 Me. 497; *Moratzky* v. *Wirth*, (Minn.). 69 N. W. 480.

*Young & Young* and *A. G. Whittemore* for the defendant.

A physician is only responsible for reasonable or ordinary care and skill and for the exercise of his best judgment. *Cayford* v. *Wilbur,* 86 Me. 414, 29 Atl. 1117; *Leighton* v. *Sargent,* 27 N. H. 460, 59 Am. Dec. 388; *Landon* v. *Humphrey,* 9 Conn. 209; *Hallam* v. *Means,* 82 Ill. 379, 25 Am. Rep. 328; *Howard* v. *Grover,* 28 Me. 97, 48 Am. Dec. 478; *Patten* v. *Wiggin,* 51 Me. 594, 81 Am. Dec. 593; *State* v. *Housekeeper,* 70 Md. 162, 14 Am. St. Rep. 340; *Wilmot* v. *Howard,* 39 Vt. 447; *Hathorn* v. *Richmond,* 48 Vt. 557; *Mullen* v. *Flanders,* 73 Vt. 95, 99. If a skilful and careful surgeon exercises his best judgment in a case of doubt, he cannot be held responsible for want of success. *Williams* v. *Poppleton,* 3 Ore. 139; *Tefft* v. *Wilcox,* 6 Kan. 46; *Sims* v. *Parker,* 41 Ill. App. 284; *Pettigrew* v. *Lewis,* 46 Kan. 78; *Getchell* v. *Hill,* 21 Minn. 464; *Wurdemen* v. *Barnes,* 92 Wis. 206; *Wood* v. *Parker,* 49 Mich. 295; *Long* v. *DeLaney,* 206 Pa. 226, 55 Atl. 965; *Barker* v. *Lane,* 49 Atl. 963; *Ewing* v. *Goode,* 78 Fed. 442; *Richards* v. *Willard,* 35 Atl. 114 (Pa.).

POWERS, J. The plaintiff, a robust boy of thirteen years, found a railroad torpedo near his home in Derby. He laid it on a plank and threw a stone upon it and exploded it, whereupon a flying fragment struck him under the inner corner of the right eye causing the injury concerned in this action. This was April 19, 1905. The cut made in the lower lid of the eye was approximately an inch long, and at the upper end next to the inner corner of the eye, the lid was cut off so that it hung down over the cheek, disclosing a wound under the eyeball into the socket of the eye. The boy was at once taken to Dr. Gaines, of Newport, who took medical charge of the case and treated the injury for about a week. In the meantime, Dr. Gaines became convinced that there was a foreign substance lodged in the eye or socket, and being uncertain whether or not or how far the eye itself might be involved, and not feeling competent to operate on the eye in these circumstances, he advised the employment of an eye specialist. The boy was taken to Sherbrook for the purpose of consulting an expert, but the latter was away, so he could not be seen. After his return to Derby, and on April 25, Dr. Gaines and Dr. Longe, who had been called in to assist and

6

who agreed with Dr. Gaines that there was a foreign substance in the eye, made preparations to operate for its removal. When it came to the point of beginning the operation, Dr. Gaines telephoned the defendant that the plaintiff had been injured by an explosion and that some foreign substance had entered the orbit of the eye, and that he did not feel competent to remove it; and he arranged with the defendant to send the plaintiff to him for treatment. The plaintiff was thereupon taken to the Mary Fletcher Hospital at Burlington, where the defendant undertook the treatment of the case. He made no effort to learn anything further of the history of the case or its prior treatment. He did not attempt to determine by probe or otherwise whether or not there was in fact a foreign body lodged in the eye or its orbit,—beyond an external examination more or less cursory in character according to the evidence,—though it is plain that the use of a probe would have easily and safely discovered the presence of the piece of tin which was afterwards removed. He gave the eye attention for a few days, and then sent the plaintiff home, assuring him that there was nothing in the eye, and with instructions to Dr. Gaines as to its subseqeunt treatment. The eye grew steadily worse until July 18, when Dr. Gaines operated upon it and removed from the orbit a piece of tin nearly an inch long and about one-half an inch wide, which was buried in the tissue to such a depth that its nearest point was about a quarter of an inch from the surface.

The action is case for malpractice. It was originally brought against the defendant and the Mary Fletcher Hospital, jointly, but during the progress of the trial, at the plaintiff's request, the court ordered a verdict for the Hospital, and the trial proceeded against the defendant alone. At the close of the plaintiff's evidence, the court ordered a verdict for the defendant. The propriety of this action of the court is the only question presented.

At the outset of the discussion the parties disagreed as to the rule which is to be applied to this defendant to test the sufficiency of his diagnosis and treatment of this injury. The plaintiff claims that the evidence is such that the defendant must be judged as a specialist; while the defendant insists that there is no evidence to warrant the application of anything but the rule governing general practitioners. We quite agree with the court below that this defendant must be judged in this case by the more

exacting rule which applies to specialists. Most of the evidence on this subject comes from the defendant himself. From him we learn that he is a physician and surgeon, and for the twelve years preceding the trial, he has been a specialist in the medical and surgical treatment of the eye, practicing at Burlington. As early as 1902, he was regularly appointed ophthalmatist of the Mary Fletcher Hospital, and then presumed that he would be and later knew that he was so named in a certain pamphlet issued by the hospital that year.

At the time here involved, he had charge of the eye, ear and throat department of that institution. He says that the term "ophthalmatist" means an eye specialist,—one who does everything that is required for the eye, medical or surgical. True, he says the term does not imply any special skill in such matters, but in this statement Dr. Twitchell is too modest. His twelve years of specialized practice, his selection by an institution of the high standing of the Mary Fletcher Hospital to take charge of the very important department named, imply special skill in the lines specified. Moreover, the very circumstances in which he was employed in this case unmistakably show that it was the special skill that he was understood to have in the surgical treatment of the eye which alone induced the plaintiff to seek his aid and it is perfectly plain that the defendant so understood it when Dr. Gaines made the arrangement with him to treat this injury. So we must test his professional conduct in this matter, not by the standard applicable to general practitioners—the oft-cited and recently approved rule of *Hathorn* v. *Richmond,* 48 Vt. 557,—but by the stricter rule applicable to specialists. Whether or not this is determinative of the case we do not say.

One who holds himself out as a specialist in the treatment of a certain organ, injury or disease, is bound to bring to the aid of one so employing him, that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to that particular organ, injury or disease,—its diagnosis and its treatment,—in the same general locality, having regard to the state of scientific knowledge at the time. 5 Thomp. Neg. §6714; *Feeney* v. *Spalding,* (Me.) 35 Atl. 1027; *Baker* v. *Hancock,* (Ind.) 63, N. E. 323, 64 N. E. 38; *Note to Gillette* v. *Tucker,* (Oh.) 93 Am. St. Rep. at p. 664. The duty of exercising this degree of skill attached to this defendant at the time of

his employment and is the measure of his responsibility in the diagnosis of the case to determine the nature and condition of the injury, as well as the proper treatment to be applied. Thomp. Neg. §6717; *Ely* v. *Wilbur*, (N. J.) 10 Atl. 358, 60 Am. Rep. 668. He is not to be judged by the result, nor is he to be held liable for an error of judgment. His negligence is to be determined by reference to the pertinent facts existing at the time of his examination and treatment, of which he knew, or in the exercise of due care, should have known. It may consist in a failure to apply the proper remedy upon a correct determination of existing physical conditions, or it may precede that and result from a failure properly to inform himself of these conditions. If the latter, then it must appear that he had a reasonable opportunity for examination and that the true physical conditions were so apparent that they could have been ascertained by the exercise of the required degree of care and skill. For, if a determination of these physical facts resolves itself into a question of judgment merely, he cannot be held liable for his error. *Manser* v. *Collins*, 69 Kan. 290, 76 Pac. 851; *Langford* v. *Jones*, 18 Ore. 307, 22 Pac. 1064; *Staloch* v. *Holm*, (Minn.) 111 N. W. 264, 9 L. R. A. (N. S.) 712.

Tested by this rule, the evidence tended to show that the defendant's conduct did not measure up to its requirements. He had a fair chance to examine the eye, and with the indications of the presence of the piece of tin so strong as the testimony of Dr. Gaines tends to show, it cannot be said as a matter of law that the defendant in his preliminary examination to ascertain the essential data upon which to predicate a professional opinion met the requirements of the rule above stated. The testimony tended to show that he did not, and the question should have been submitted to the jury, for the evidence shows that the tin ought to have been removed at the earliest possible moment.

*Judgment reversed and cause remanded.*