ARNOLD DOMINA, B.N.F. CLYDE DOMINA *v.* G. O. PRATT.

February Term, 1940.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed May 7, 1940.

*Austin & Edmunds* for the defendant.

*Shangraw & Brown* and *M. H. Alexander* for the plaintiff.

MOULTON, C. J. ▇ Although a physician is not required to have the highest degree of skill obtainable in his profession, or even that shown by those whose location affords them unusual opportunities for practice, he is held responsible for the pos-

session of ordinary skill and knowledge in matters pertaining to his calling and to ordinary care in the exercise thereof. *Sheldon* v. *Wright,* 80 Vt. 298, 314, 67 Atl. 807. The result of his treatment is not determinative of the performance of his obligation (*Parker* v. *Bowen,* 98 Vt. 115, 120, 126 Atl. 522; *Rann* v. *Twitchell,* 82 Vt. 79, 84, 71 Atl. 1045, 20 L. R. A. (N. S.) 1030; *Wilkins' Admr.* v. *Brock,* 81 Vt. 332, 343, 70 Atl. 572; *Sheldon* v. *Wright, supra,* p. 315), nor is he to be held liable for an error of judgment unless it is so gross as to be inconsistent with due care (*Wilkins' Admr.* v. *Brock, supra,* p. 345); and he is not required to be infallible. *Hathorn* v. *Richmond,* 48 Vt. 557, 562, 563. The standard to which he must conform is the degree of care and skill that is ordinarily possessed and exercised in like cases by physicians in the same general line of practice who follow their profession in the same general neighborhood. *Parker* v. *Bowen, supra,* pp. 119, 120; *Willard* v. *Norcross,* 86 Vt. 426, 430, 85 Atl. 904; Id., 81 Vt. 293, 298, 69 Atl. 942; *Sheldon* v. *Wright, supra; Mullin* v. *Flanders,* 73 Vt. 95, 99, 50 Atl. 813.

 This standard applies not only to the physician's treatment of the patient's disease or injury but as well to his diagnosis of the malady. Negligence may consist in a failure to apply the proper remedy upon a correct determination of the existing physical conditions or it may precede that and result from a failure properly to inform himself of these conditions. *Rann* v. *Twitchell, supra,* p. 84. A physician is bound to give his patient as careful and thorough an examination as the circumstances permit, using such care and skill and such methods of diagnosis for discovering the nature of the ailment as are required by the rules of good local practice, and if by the exercise of such care and skill, combined with a reasonable opportunity for examination, the patient's true condition could have been discovered, the failure to discover it will amount to actionable negligence. But his conduct in this behalf is to be judged by what he saw and knew, or ought to have seen and known at that time, not by what may have developed or come to light since, and here again he cannot be held liable for an error in judgment. *Willard* v. *Norcross, supra,* pp. 440, 441; *Rann* v. *Twitchell, supra.*

 It is, moreover, a well-established rule that the lack of requisite care and skill must be shown by medical expert testi-

mony. *Parker* v. *Bowen, supra,* p. 119; *Willard* v. *Norcross, supra,* p. 430; *Wilkins' Admr.* v. *Brock, supra,* p. 343.

In the present action for malpractice it is claimed that the defendant physician was negligent in making his diagnosis because he omitted to apply certain recognized tests, which, in view of his previous knowledge and information concerning the plaintiff's symptoms and history, would have informed him of the exact nature of the condition with which he was called upon to deal, and that having, by reason of this omission, failed to make a proper diagnosis, he administered an improper course of treatment which resulted in the plaintiff's great damage.

The defendant's motion for a directed verdict, the exception to the denial of which presents the first question for review, is based upon two grounds: (1) that there was no medical expert testimony tending to show a failure of the requisite skill and care in making the diagnosis; and (2) that there was no evidence tending to show that the subsequent treatment was negligent or unskilful or was the cause of the plaintiff's present condition.

In passing upon this motion the evidence must be viewed in the light most favorable to the plaintiff, and if there was any substantial evidence fairly and reasonably tending to support the plaintiff's claim the issue was for the jury. *Picknell* v. *Bean,* 99 Vt. 39, 41, 130 Atl. 578; *Ronan* v. *J. G. Turnbull Co.,* 99 Vt. 280, 131 Atl. 788; *Cummings* v. *Connecticut General Life Ins. Co.,* 101 Vt. 73, 85, 142 Atl. 82.

Tested by this well-established rule the jury would have been justified in finding the following facts: The plaintiff, a child of seven years of age, became a patient of the defendant in February, 1937. During the previous December he had been found to be suffering from diabetes, and, under the direction of another physician, had been placed upon a diet. When the defendant took charge of the case, he caused the plaintiff to be sent to the hospital in St. Albans for observation and here he remained for two weeks. After his return to his home the defendant kept him upon a diet until September when he prescribed protomine zinc insulin, which is cumulative in effect and reaches the peak of its effectiveness eighteen to twenty hours after it has been administered. At first this remedy was given by the defendant

at his office, but later by the child's parents, in amounts varying from 30 to 52 units a day. The mother, under the defendant's instructions, made daily tests of the urine, and the plaintiff was taken to the defendant's office about once a month, where the latter tested his urine for sugar and acetone. During this time the plaintiff gained weight, was active and lived a normal life, being regular in his attendance at school, where he was studious and a good scholar with very good marks. On the morning of May 19, 1938, his mother gave him 52 units of insulin. During that day he was at school, and appeared to be in no wise ill. In the evening his mother tested his urine and found considerable sugar. Between twelve and one o'clock on the morning of the twentieth he was discovered to be unconscious. His mother gave him a small quantity of maple syrup and about ten minutes thereafter he revived slightly and spoke to his parents. They took him to the defendant's house, which was about seven miles from their farm, arriving between one and two o'clock, and, having awakened the defendant, took the child into the office and placed him upon the table. During the journey he was quiet and unconscious, but on arrival he was in a cold sweat, extremely pale, and very restless—so restless that he had to be held upon the table. The mother informed the defendant of the sugar found by the evening test, the amount and time of the administration of insulin, and the giving of the syrup and the subsequent brief return to consciousness. The defendant felt his eyeballs and pulse, and, in response to an inquiry, said that the plaintiff was in diabetic coma. He therefore injected unmodified insulin, which acts in 15 to 30 minutes, and reaches its peak of effect 2 to 3 hours after administration, and continued this course of treatment at 20 minute intervals, until in all he had given 160 units. The child continued to be very restless and grew worse. At some time between 4:30 and 5 o'clock, after the last injection of insulin, he had convulsions, during which the defendant introduced a tube through his nose to the stomach, explaining that he was washing out the stomach with soda and water, although he testified that the fluid also contained glucose and sugar, and the plaintiff vomited. At no time did the defendant test the plaintiff's urine or take his temperature. At about seven o'clock the plaintiff was taken to the St. Albans hospital, having convulsions on the way, and on arrival was

found to be suffering from profound insulin shock, his blood sugar content being too low to be read or recorded. He had suffered a cerebral hemorrhage while in insulin shock. From then on he rapidly alternated between insulin shock and diabetic coma, never regaining consciousness. After two weeks he was taken to the Royal Victoria Hospital in Montreal, and two weeks later he was sent back to the St. Albans Hospital where he remained for five weeks. During all this time he was unconscious, and paralyzed. At the time of the trial although physically improved, he was diabetic, partially paralyzed and an idiot with no hope of recovery and an expectancy of life of not over five years.

Evidence given by qualified medical witnesses, who were familiar with the local professional standard of care and skill and testified with regard to it, tended to show the following facts: Diabetes mellitus (which is the proper designation of the plaintiff's initial ailment) is a disease of the pancreas, which, by reason of the diminution or failure of the secretions of that gland, results in an oversupply of sugar in the blood. This condition can be remedied by the administration of insulin, (either protomine zinc or unmodified, the respective characteristics of which have been already mentioned), which supplies the lack of the necessary pancreatic secretions. Where the blood sugar content is not properly regulated, and becomes excessive, a condition known as diabetic coma, or hyperglycemia, is induced; but where insulin has been administered to such an extent that the blood sugar falls below the normal level, insulin shock or hypoglycemia develops. The proper treatment of diabetic coma is the administration of insulin, in order to reduce the blood sugar content; but in the case of insulin shock such content must be increased, and so some form of carbohydrate or, in a critical situation, dextrose should be given. If this is done the condition of the patient usually improves within a short time. Whether the diagnosis is diabetic coma or insulin shock it is proper immediately to give glucose or some form of carbohydrate, because this will do no material harm in the former case and will tend to a cure in the latter. Diabetic coma usually comes on gradually, the patient is quiet and unconscious, the skin is flushed, dry and hot, the breath has a characteristic odor, the

pupils of the eyes are contracted, and the temperature is elevated. The onset of insulin shock is sudden, the skin is pale and moist, the patient perspires freely, is unconscious and restless and almost invariably has convulsions. Cerebral hemorrhage is a complication of insulin shock and may be produced by it. The fact that a comatose diabetic has revived briefly after the administration of some form of carbohydrate is suggestive of insulin shock. In the diagnosis of the patients' condition a test of the urine, which can be made in five minutes, is most important, and, if this is done, it is not difficult to determine whether he is suffering from diabetic coma or insulin shock, since by this means the sugar content can be discovered. It is helpful to make repeated tests during the period of the treatment.

It is true that the testimony of the defendant as to the plaintiff's symptoms and as to the examination made and the treatment administered, differed in many material and important respects from that of the plaintiff's witnesses, and that the evidence given by the medical experts called by the respective parties was not entirely in accord; but with these contradictions we are not here concerned since they were for the jury to weigh. *Comeau* v. *C. C. Manuel & Sons Co.*, 84 Vt. 501, 509, 80 Atl. 51. It is sufficient to say that the record discloses evidence fairly and reasonably tending to support the claim that the defendant failed to exercise the requisite degree of care and skill in informing himself as to the plaintiff's condition, and in diagnosing it as diabetic coma, when in fact it was insulin shock, and that he pursued a course of treatment which was, under the circumstances, improper and harmful, resulting in the injury alleged. The motion for a directed verdict was properly denied and the defendant's exceptions thereto are not sustained.

There is a further claim that there was a negligent delay in sending the plaintiff to the hospital, but there is some doubt whether this ground of recovery is sufficiently alleged in the declaration, and, in view of what we have said above, it is not necessary to consider it.

On the direct examination of a medical expert witness called by the plaintiff, he was asked: "Now with such a patient, had you diagnosed this as diabetic coma of the patient that is mentioned in that previous hypothetical question, what would

you have done by way of treatment?'' On objection by the defendant's counsel the question was withdrawn. The defendant claims that an exception was taken, but the record does not disclose it. Because this does not appear, and also because the question was not answered, nothing is presented for review.

The next question was this: ''Having in mind the standard that is required in the neighborhood, Richford and vicinity, where you and the defendant are practicing, in either diagnosis whether diabetic coma or insulin shock would the safest thing to have done immediately is to give glucose or some carbohydrates?'' The witness was permitted to answer, subject to the defendant's exception upon the ground that the question did not include a statement of the plaintiff's symptoms. The answer was ''I believe so.'' There was no error in the ruling. The question was not a hypothetical one, as the defendant seems to regard it, but an interrogation of a qualified witness concerning a material point. As we have seen, the evidence on the part of the plaintiff tended to show that although the patient was brought to the defendant's office between one and two o'clock, and his malady diagnosed as diabetic coma, no remedy except 160 units of unmodified insulin was administered until a convulsion came on between 4:30 and 5 o'clock. The testimony received under exception bore upon the issue whether, even though the jury should find that the diagnosis was correct, the treatment was in accord with the required standard of care and skill.

Later on in his direct examination the same witness was asked: ''Now, this patient is brought to your office and you diagnosis it as diabetic coma, what treatment would you give?'' Subject to defendant's exception the witness was permitted to reply: ''I can only answer how I would treat a diabetic coma in any patient.'' As to this exception it is sufficient to say that it does not affirmatively appear that the rights of the defendant were injuriously affected by the answer as given, and so the exception is unavailing. Supreme Court rule 9; *State* v. *Fairbanks*, 101 Vt. 30, 34, 139 Atl. 918; *Parker* v. *Roberts*, 99 Vt. 219, 225, 131 Atl. 21, 49 A. L. R. 1382.

The defendant excepted to the failure of the court to comply with his request to instruct the jury: ''That the defendant's error of judgment if you find it existed in diagnosing the condi-

tion of the plaintiff, Arnold Domina, when brought into his office on May 20, 1938, does not amount to malpractice unless so gross as to be inconsistent with due care judged under the standard of care to which this defendant must measure up as heretofore explained.'' The exception was clearly and explicitly taken and the authorities upon which the defendant relied were called to the court's attention.

The request was sound in law, and in accordance with the rule announced in *Wilkins' Admr.* v. *Brock,* 81 Vt. 332, 345, 70 Atl. 572. See, also, *Rann* v. *Twitchell,* 82 Vt. 79, 84, 71 Atl. 1045, 20 L. R. A. (N. S.) 1030; *Willard* v. *Norcross,* 86 Vt. 427, 441, 85 Atl. 904. The plaintiff contends that there was a substantial compliance with the request, but an examination of the charge reveals that, while the general principles of the physician's liability were adequately covered, the question of an error in judgment was not called to the attention of the jury. In view of the conflicting evidence as to the plaintiff's symptoms and condition when brought to the defendant's office, this instruction should have been given, and the failure to do so constitutes reversible error.

The defendant excepted to a remark made by the plaintiff's counsel in argument, but the record shows that the statement was immediately withdrawn, and the court, having ruled it to be improper, instructed the jury not to consider it. The offending counsel, on his part, asked that it should be disregarded. Under these circumstances the mischief was cured. *State* v. *Stacy,* 104 Vt. 379, 404, 160 Atl. 257, 747 and cas. cit.

At the time of entering judgment on the verdict the court found and adjudged that the cause of action arose from the wilful and malicious act or neglect of the defendant, and that he ought to be confined in close jail, and directed the issuance of a certified execution. To this finding and order the defendant excepted.

The court did not file a written finding of facts, but since the transcript and exhibits have been made a part of the bill of exceptions, and controlling, we are to determine whether, in view of the evidence, the oral finding should be upheld. *Benway* v. *Hooper,* 110 Vt. 497, 8 Atl. 2d. 658, 659, and cas. cit. The awarding of the certificate is so far a question of fact and matter of discretion that the finding is not revisable if there is any evi-

dence to support it. *Healy, Admr.* v. *Moore,* 108 Vt. 324, 349, 187 Atl. 697. The statute authorizing this procedure (P. L. 2195) contemplates a separate and independent examination of the evidence by the trial court as a basis for the adjudication. *Jewett* v. *Pudlo,* 106 Vt. 249, 254, 172 Atl. 423; *Healy, Admr.* v. *Moore, supra,* p. 350. The contrary not appearing, we must assume that this was done with impartial patience and attention with the deliberate result embodied in the finding. See *Platt, Admx.* v. *Shields & Conant,* 96 Vt. 257, 269, 119 Atl. 520; *Putnam* v. *Woodard,* 111 Vt. 39, 10 Atl. 2d. 186, 188.

The defendant contends that there was nothing in the case tending to show that he was guilty of a wilful and malicious act or neglect, or that he committed anything more than an error in judgment, or that the treatment which he gave was a natural consequence of a reckless diagnosis and so intentionally followed.

We said in *Healy, Admr.* v. *Moore, supra:* "The term 'Wilful and malicious act or neglect' as used in the statute signifies a wrongful act done intentionally without just cause or excuse, and the malice contemplated is involved in the intentional doing of a wrongful act in disregard of what one knows to be his duty to the injury of another \* \* \*. An omission, or neglect, may be wilful and malicious, equally with an affirmative act, and if it exists, will warrant the granting of the certificate \* \* \*. The fact that the defendant did not intend the injurious result which flowed from his intentional act or omission does not make the case one in which the certificate cannot be granted." Every sane person, indeed, is presumed to intend the natural consequences of his act. *Benway* v. *Hooper, supra.*

As we have seen, there was evidence tending to show that the defendant omitted to make a test of the plaintiff's urine, which would have informed him of the nature of the malady he was called upon to treat, that he omitted to administer the remedy proper and called for under the circumstances, but injected insulin to an injurious amount, and that the plaintiff's subsequent condition was the result thereof. We cannot say, therefore, that the finding was without evidentiary support, and, this being so, no error is made to appear. This exception is not sustained.

*Judgment reversed and cause remanded.*