ROSE PEPIN *v.* CHARLES A. AVERILL.

February Term, 1943.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and

JEFFORDS, JJ.

Opinion filed May 4, 1943.

*Carver & Lawson* and *A. Pearley Feen* for the defendant.

*Frederick W. Wakefield, Jr.,* for the plaintiff.

STURTEVANT, J. This is a tort action in which the plaintiff, Rose Pepin, seeks to recover damages alleged to have resulted to her because the defendant failed to use the required degree of skill and care in extracting several teeth for her. The plaintiff had a verdict and judgment below and the case is here upon the defendant's exceptions, saved to the court's refusal to grant his motion for a directed verdict.

In passing upon this motion the evidence must be viewed in the light most favorable to the plaintiff, and if there is any substantial evidence fairly and reasonably tending to support the plaintiff's claim the issue was for the jury. *Domina* v. *Pratt,* 111 Vt 166, 171, 13 A 2d 198, and cases cited. From the evidence so

construed the jury would have been justified in finding the following facts.

On November 7, 1941, the plaintiff, a young woman about 23 years of age and then in good health, went to the defendant's dental office in Burlington for the purpose of having several teeth extracted. At that time the defendant had practiced his profession in Burlington for twenty-five years and had practiced in other places 15 years before coming to that city. At the plaintiff's request, gas was administered to her and the defendant extracted seven of her teeth, including two right lower molars. The operation was performed at about 11.30 A.M., and the extraction took about 3 minutes. Each of the teeth came out normally and without breaking. One of the right lower cavities bled profusely after the extraction. While some of these teeth were badly decayed, the second right lower molar in the region where the profuse bleeding occurred had just started to decay and had given the plaintiff no trouble at that time. About 1 o'clock, P.M., the bleeding appeared to be less severe and the defendant went to lunch leaving the plaintiff reclining in the dental chair. When he returned profuse bleeding had again started and he attempted to stop it by packing the cavities. Being unable to check the blood flow, he called in Dr. Bombard, a practicing physician in Burlington. Not being successful in stopping the bleeding, Dr. Bombard took the plaintiff to the DeGoesbriand Hospital at about 3 P.M., and the case was turned over to Dr. Sawabini, the resident dental surgeon there. At about 6 P.M., the bleeding had slowed and the plaintiff was taken to her home but was returned to the hospital that same evening as the bleeding had again started. It was finally stopped at about 4 o'clock the following morning. The plaintiff remained at the hospital until November 11th at which time she was discharged, but continued to require medical treatment for a considerable period thereafter.

The following excerpts from the testimony of expert witnesses introduced at the trial are material to the question before us.

Dr. Averill, the defendant.

Q. Doctor, do you know where the long buccal vessel in the mouth is? A. Yes.
Q. Where is it, Doctor? A. Comes down in the outside of the gums, branches of it.

Q. If that were cut, would that cause her to bleed quite a bit? A. Yes.

Q. As a matter of fact, you did cut the long buccal vessel, did you not, Doctor? A. A branch of it, I think.

Q. And you cut the long buccal vessel in the lower right-hand jaw, is that so? A. I think so.

Q. Do you know just near what tooth you cut that long buccal vessel? A. I should say the second molar.

---

Q. Doctor, did you cut the buccal vessel intentionally? A. The small vessels going to it, I say.

Q. Just answer the question please. A. Did I what, do it intentionally? (question read) A. Why no.

Q. In other words, in your diagnosis, you didn't think it was necessary to intentionally cut this buccal vessel in order to pull that tooth, did you? A. No.

---

Q. Would you say it was good practice in the usual case, to cut the buccal vein when the teeth, as you have testified, come out ordinarily and without any undue pressure? A. No.

Dr. Sawabini.

Q. When you examined this patient at the hospital, did you see any reason to believe her buccal vessels were not in the normal position? A. When the patient came in she was bleeding, and my whole attention was centered on stopping that bleeding; it came from the buccal vessel and the inferior dental vessels.

Q. ———— the buccal vessels and the inferior vessels were in the proper place in this party, as far as you know? A. Yes.

Q. Where does the long buccal run in the jaw? A. I did not say the bleeding was from the buccal artery.

Q. In other words, when you say a vessel, it may be an artery or may be a vein? A. Yes.

---

Q. You say on the report that the buccal vessel was cut, don't you? A. No Sir.

Q. What do you say there, let's get it straight? A. I read every word here, the admitting diagnosis: "Hemorrhage from the inferior dental vessels and the buccal vessel."

Q. That means the long buccal vessel was injured so it bled? A. Yes.

Q. What if the forceps slip and come in contact with the teeth? A. Anything might happen then.

Q. That would injure the buccal vessel, is that right? A. If the forceps came under the buccal vessel it would injure it.

---

Dr. Stone.

Q. What did Dr. Sawabini mean by the long buccal vessel? A. He meant the vessel that accompanies the long buccal nerve and that nerve supplies the tissues right next to the lower molars on the outside.

Q. In pulling an ordinary tooth do you have anything to do with that vessel? A. No, you don't.

Q. ———— assuming that a dentist using the degree of care and skill that is ordinarily possessed and exercised in like cases, by dentists who follow their profession in the City of Burlington, extracts some teeth which he has no difficulty pulling and which come out easily, will the long buccal artery in such case be cut or ruptured? A. Branches of it will.

Q. But not the long buccal artery iself? A. Not the main trunk, no.

Q. Is it the accepted practice among local dentists to cut the buccal vessel or artery in pulling a normal tooth? A. Of course not.

■ ■ The result of the treatment given by a practicing physician to his patient is not determinative of the performance of his obligation. *Domina* v. *Pratt,* 111 Vt 166, 170, 13 A 2d 198, and cases cited. The standard to which he must conform is the degree of care and skill that is ordinarily possessed and exercised in like cases by physicians in the same general line of practice who follow their profession in the same general neighborhood. *Domina* v. *Pratt,* 111 Vt 166, 170, 13 A 2d 198. That this rule applies to dentists and is the standard of measurement to be used here is not questioned.

Applying the foregoing rule to the evidence it appears that the jury could reasonably have found that the defendant, at the time in question, was dealing with a normal case of extracting teeth. In performing the operation, he cut or injured the long buccal vessel so that it bled profusely thus resulting in injury to the plaintiff.

While the injury to the long buccal vessel was accidental, it was that kind of an accident which does not happen when the operation is performed with that degree of care and skill ordinarily possessed and exercised in like cases by dentists in general practice in that general neighborhood.

The defendant has called our attention to evidence which conflicts with that which we have above set out but, as before stated, we are here dealing with the evidence taken in the light most favorable to the plaintiff.

It follows that there was no error in over-ruling the defendant's motion for a directed verdict.

*Judgment affirmed.*

## ON MOTION FOR REARGUMENT.

STURTEVANT, J. The defendant has filed a motion for reargument of this case. In support of this motion he urges two grounds, namely:

First. When the defendant was on the stand, in cross examination, he was asked, "And you cut the long buccal vessel in the lower right-hand jaw, is that so?", to which he replied, "I think so." The defendant contends that this answer was "put into the mouth of the witness," by the examiner and so is not for the consideration of the jury. The question was, in effect, a repetition of the one preceding and to which the witness had given an evasive answer. However, such answer, when considered in connection with what the defendant had already stated as to the long buccal vessel, shows that he understood what was asked. The question was material and the answer responsive. It follows that it was for the jury to weigh and consider.

Second. The defendant also contends that the opinion disposes of the case by applying the doctrine of *res ipsa loquitur*. It appears that the jury could reasonably find that, in extracting some of the plaintiff's teeth, the defendant injured the long buccal vessel as claimed by the plaintiff. By so doing the defendant failed in the performance of the duty which he owed to the plaintiff as fixed by the rule stated in the opinion. This is not an application of the doctrine of *res ipsa loquitur*.

*Motion for reargument denied. Let full entry go down.*