HATTIE WILLARD *v.* ·E. F. NORCROSS.

October Term, 1911.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed February 5, 1913.

*Physicians and Surgeons—Malpractice—Liability—Local Stand-*
*ard—Sufficiency of Evidence—Necessity of Medical Expert*
*Testimony—Competency—Final Judgment for Defendant*
*in Supreme Court—New Trial—Newly Discovered Evidence*
*—Surprise—Remarks of Judge—Affidavits—Necessity—*
*—Taking Testimony—Requisite Notice.*

To warrant recovery against a physician for malpractice there must
be medical expert testimony tending to show that defendant, in
his treatment of plaintiff, did not exercise the care and skill then
had and exercised in the treatment of like cases by physicians and
surgeons, practicing in the same neighborhood, and in the same
general line of practice.

.Medical expert testimony *held* insufficient to show malpractice by a
physician in treatment of Colle's fracture of plaintiff's wrists.

In an action against a physician for malpractice, certain physicians
were competent to testify as to the, standard of treatment in the
neighborhood where defendant practiced, though they were some-
what more prominent than defendant in their profession, and their
principal practice was in a community a few miles away from de-
fendant's, and they had no practice in his immediate neighborhood,
but had some in his county.

In an action against a physician for malpractice, where defendant tried
the case, and the court instructed, on the theory that the local
standard ·of care and skill would determine defendant's liability,
the issue was not broadened to the standard of good surgery gen-
erally, so as to authorize the consideration of testimony as to
"good surgery," without reference to the standard in the locality
of defendant's practice, given by physicians incompetent to testify ·
as to that local standard.

A physician is not responsible for injurious treatment, where he ex-
ercises the care and skill exercised in the treatment of like cases

by physicians practicing in the same general neighborhood and in the same general line of practice.

Where judgment for plaintiff is reversed because his evidence was insufficient to warrant a recovery, it is the settled practice of this Court to render final judgment for defendant, unless it appears that, in another trial, plaintiff can supply the evidence found to be lacking in the previous one.

On plaintiff's motion to remand for a new trial in lieu of final judgment for defendant on reversal, it is plaintiff's duty properly to call the Court's attention to the existence of the missing evidence necessary to his recovery on another trial, and the recitation in a former opinion of this Court in the same case of the tendency of the evidence as shown by the then bill of exceptions will not serve that purpose, though affidavits in support of plaintiff's petition for a new trial, upon this reversal, may be considered on said motion to remand.

Where a physician, in the exercise of the requisite care and skill, makes a mistake in his diagnosis, and treats the case properly according to his diagnosis, and without negligence in failing to make the true diagnosis during treatment, he is not liable for malpractice.

Where a physician makes a false diagnosis of an injury and treats it accordingly to the damage of the patient, and if, in the exercise of the requisite degree of care and skill, he would have discovered the real nature of the injury either at the first examination or during the subsequent treatment, he is guilty of malpractice.

A physician who exercises the requisite care and skill in the diagnosis and treatment of a case is not liable for the consequence of a mere error of judgment.

Whether a physician, in failing to make a proper diagnosis, exercised the requisite care and skill must be determined from the conditions existing at the time of the treatment, and not from conditions subsequently developing.

Though the final result of a physician's treatment of an injury is as good as could be expected from the most skilful treatment, he may still be liable for malpractice, since there might be greater suffering or longer disability than would have resulted with proper treatment.

In an action against a physician for malpractice, it is not ground for a new trial that plaintiff was surprised by the ruling of the trial court that a certain physician was not qualified to testify to the

local standard of treatment, where it appears that plaintiff did not move for a continuance, and had ample time to call other witnesses to that point.

In an action against a physician for malpractice, it is not ground for a new trial that the presiding judge mislead plaintiff by expressing an erroneous opinion that there was evidence tending to show that defendant's conduct fell below the local standard, as the responsibility in that respect was on counsel and not on the court.

A petition to the Supreme Court for a new trial on the ground of newly discovered evidence should be supported by the affidavit of the petitioner, and also by the affidavit of all the attorneys acting for her at the time of her former trial.

The rule of the Supreme Court, relative to the taking of testimony in support of a petition for a new trial, by implication requires such testimony to be taken on notice to the petitionee.

Where the newly discovered evidence relied on by plaintiff in support of her petition for a new trial consists of testimony of two physicians within easy reach, and with whom her counsel had talked before trial about the matters desired to be proven, and no sufficient excuse is shown why the missing testimony was not procured, and it appears probable that new testimony would not produce a different result, a new trial will not be granted.

CASE for malpractice. Plea, the general issue. Trial by jury at the April Term, 1911, Essex County, *Hall*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. At the close of all the evidence the defendant moved for a directed verdict. Motion overruled, to which the defendant excepted. The plaintiff also brought her petition for a new trial to February Term, 1912, of the Supreme Court. The opinion states the case. This case has been thrice before in Supreme Court, see 81 Vt. 293; 82 Vt. 285; and 83 Vt. 268.

*George L. Hunt* for the defendant.

*H. W. Blake* and *Simonds & Searles* for the plaintiff.

ROWELL, C. J.　This is an action for malpractice as a physician and surgeon. On December 29, 1902, the plaintiff, as she was leaving her place of employment in Island Pond in the town of Brighton, in Essex County, slipped and fell forward onto her outstretched hands and hurt her wrists. The defendant,

living and practicing in Island Pond, being called to attend her, undertook the case and visited her three or four times before she left Island Pond and went to Charleston, Vt. The testimony on her part tended to show that on defendant's first visit her wrists were swollen and painful; that he took hold of them and moved them back and forth several times and examined them, and said no bones were broken; that she spoke about using liniment, and asked him if any particular kind was needed, and that he said any kind, horse liniment was good, it was strong; that he did not bandage them; that two days after the injury her wrists were swollen a little larger than normal and were black and blue; and that for two months or more she was unable entirely to dress or to feed herself, and had never since been entirely free from pain, does not sleep well, and is unable to use her wrists as effectually as before without causing them to become painful and swollen.

The testimony on her part, given by Drs. Van Allen and Smith, of Springfield, Mass., further tended to show that she had at sometime suffered an impacted Colle's fracture of both wrists. On cross-examination Dr. Smith testified among other things that the plaintiff had apparently a useful wrist, had a good movement of the hand; that he did not know about the strength of the wrist, her power to work with it, but as far as movements were concerned, she had good movement; that she had more deformity than she would have had, perhaps, if there had been some attempt at replacing the bones and holding them in position, that he should say she had a fair result; that he should not expect a perfect result in a person fifty-five years old, but that as far as function is concerned, the mobility of the joint was as good as could be expected with any kind of treatment. On re-direct examination he testified that the prognosis in case of a woman fifty-five years old suffering a Colle's fracture of both wrists is good, good hand and useful wrist with a slight deformity. The testimony of Dr. Smith further tended to show that a Colle's fracture is difficult of treatment; that when the bone is only slightly cracked and no displacement, there is great danger of overlooking it and mistaking it for a sprain.

The plaintiff called the defendant in the opening of her case, and he testified that he had practiced his profession in Island Pond for more than twenty-five years; that on December 29, 1902, he undertook the professional care of the plaintiff, and

after a careful and satisfactory examination, diagnosed a sprain of both wrists but found no fracture; that in his treatment of her he used only one form of splint, namely, a pillow to support her hands and wrists, which were in no way bound to the pillow but only rested upon it.

Passing all else for the present at least, we come to consider whether there was any medical expert testimony tending to show that the defendant, in his treatment of the plaintiff, did not have and exercise the care and skill then had and exercised by physicians and surgeons in the treatment of like cases in the general neighborhood of said Brighton, for that question is raised by his motion for a verdict. That such testimony was essential to recovery is not denied, and is shown by *Wilkins's Admr.* v. *Brock*, 81 Vt. 332, 343, 70 Atl. 572.

The bill of exceptions says that the only medical expert testimony introduced by the plaintiff for the purpose of showing that the defendant, in his treatment of the plaintiff, did not have and exercise such care and skill as physicians and surgeons in the general neighborhood of Brighton in the same general line of practice as that of the defendant, had and exercised in like cases,—is found in the cross-examination of Dr. Stiles of St. Johnsbury, a witness called by the defendant and qualified as an expert in the X-ray and also as a physician and surgeon; in the testimony of Dr. Mitchell, of Lancaster, N. H., deceased, given at the first trial and read at this; and in certain portions of the testimony of Dr. Leith, given at the first trial and read at this.

The bill then goes on to say that the defendant claimed that the plaintiff also improved Dr. Van Allen and Dr. Smith for the same purpose, and that as to whether they were so improved, their testimony thereinafter recited is referred to and made a part thereof. The bill also says that it appeared that Drs. Mitchell and Leith were physicians and surgeons at Lancaster, about forty miles from Island Pond, and having a thousand more population, and that they practiced there and in Essex County; that some of the evidence tended to show that they were physicians and surgeons of wide experience and practice, and prominent in their profession in the vicinity of Guildhall, the county seat of said county, and that their practice extended over a larger territory than the defendant's. As to whether the above mentioned testimony of Drs. Stiles, Mitchell, and Leith tended

to show that the defendant, in his treatment of the plaintiff, did not have and exercise such care and skill as that which physicians and surgeons practicing in the general neighborhood of Island Pond, in the same general line of practice, ordinarily had and exercised in the treatment of like cases, their testimony is referred to and made a part of the bill.

The evidence on the part of the defendant tended to show that he treated the plaintiff five times from December 29, 1902, to January 29, 1903, and attended her until she left Island Pond and went to Charleston; that at his first visit he found her in a nervous, excited condition with considerable pain; that her wrists were somewhat swollen but that she could use her fingers; that he manipulated her wrists and found no displacement of bone, no deformity, and no crepitus, and diagnosed the injury as a severe sprain of both wrists, and had in mind the possibility of a crack in the radius, but on examination found no indication of it; that he advised complete rest, with cold applications for the first twenty-four or thirty-six hours, and then hot applications, and that she should keep her hands at rest on a pillow; that the matter of using liniments was mentioned, and he suggested that it might be well to use them at the proper time; that at his second visit he found the plaintiff in practically the same condition, except less pain and swelling in the wrists, and advised hot applications, such as liniment, hot salt and water or beef brine, to take out the soreness; that at his last visit he found a marked improvement in the plaintiff, absence of swelling, pain greatly subdued, and such a state of recovery that he advised gentle movement of the wrists to prevent stiffness and inflammation; that neither splints nor bandages were required by good surgery under the circumstances in which he found the plaintiff, but that their use, both arms being involved, would have increased her discomfort and been burdensome to her, and, considering her nervous temperament, would have done more hurt than good, and prevented the application of local remedies; that his treatment was good surgery, and that therein he had and exercised all the care and skill that physicians and surgeons practicing in the general neighborhood of Island Pond in the same general line of practice ordinarily had and exercised in the treatment of like cases; that the plaintiff never suffered a Colle's fracture of either wrist, and if she had, her recovery was perfect; that the pain she claimed to suffer in her wrists was partly pretended

and the rest neurotic, which was in no way due to malpractice, but to a fixed idea in her mind resulting from brooding over her injury.

But it must be noticed in this connection that the defendant testified otherwise in some respect at the first trial, for he then said on cross-examination that he thought the radius was cracked, but that there was no fracture nor displacement, and no deformity except that made by the swelling. That testimony is evidence against him now tending to show that the radius was cracked as he then said it was, and that, according to some of the medical testimony, would make a Colle's fracture, and such will be taken to be the fact for the purposes of the motion.

Coming now to the medical expert testimony introduced by the plaintiff as stated, to show malpractice, the defendant objects that as matter of law the testimony of these doctors is not available to the plaintiff to establish the standard by which he was to be judged, for that they practiced in places much larger than Island Pond, one of which is in another jurisdiction where the standard required was not known; and for that they were more prominent in their profession than he, and of wider practice and greater experience, especially in fractures of this kind; and though one witness said that they practiced in Essex County, he could not say that they had ever practiced in Island Pond. But the objection is not well taken, and the testimony stands for consideration.

Dr. Stiles said on cross-examination, in effect, that if, when fifty or fifty-five years old, the plaintiff slipped and fell as she claimed, and immediately thereafter suffered great pain and was unable to move her hands and fingers, he should say she had sprained her wrists, and that had he been called to treat her, he should undoubtedly have used liniments and possibly cold or hot applications, and had them rest; that he should have examined them to see if there was something more than a sprain, and if he had found an impacted Colle's fracture, he should probably have put it into splints; that in the vicinity of his practice a good many do and some do not put them into splints; that it had usually been his practice to use splints of some kind; that it is a question for the attending surgeon whether he will use splints or not; that he did not know what other doctors did in that respect, but presumed they used splints, which he considered the best treatment.

Dr. Mitchell testified to having attended and had to do with probably more than a hundred cases of Colle's fracture; that the prognosis of such a fracture as to the use of the wrist is very good; that they expect to get a useful wrist, and do in a great majority of cases, but that in nearly all cases there will be a little deformity, that the wrist will not be exactly the same shape as it was before, that it is impossible to make it the same, whatever is done; that the prospect of a perfect wrist is much less when the patient is old than when young; that in the treatment of a Colle's fracture the object of using splints is simply to keep the fragments, the bones, in position if there is a deformity and it is necessary on that account to set the wrist, in which case splints should be put on to retain it in proper position, but if the lower end of the radius is merely cracked and no displacement, there is no necessity for splints; that according to the defendant's statement of what he found when he first visited the plaintiff and his idea of her condition and what he did and prescribed, his treatment was good surgery; that splints are not always used in fractures; that every case must be treated on its own merits; that a splint often does a certain amount of harm in any case, galls frequently, presses, and contracts the muscles, though in a great majority of cases it must be used; that where there is no deformity there is no call for the splint, and in many other instances; that in respect to Colle's fracture, it is laid down in medical authorities that any appliance is proper that will be comfortable and allow the parts to remain in position; that there is no hard and fast rule, fractures are so different, no two alike; that the best plan for the surgeon to adopt is to reduce the dislocation if there is any, any deformity, and put the parts into the most comfortable and proper position that can be done and keep them there; that if the plaintiff had such a fall as she claims, and thereby sustained a Colle's fracture, she has had a very excellent recovery, a great deal better than the majority of cases; that art could not expect to do better, and probably might have done worse; that she has some deformity, mainly or entirely in the dislocation of the head of the ulna, which is dislocated and dropped down, making the ordinary deformity; that in perhaps nine-tenths of all the cases of Colle's fracture he ever treated or saw treated, there is that deformity left, especially in people along in years; that in young people and children, you can remove the deformity better; that Wyeth has a good book on

surgery in which he says, that if there is little or no displacement and deformity, there should be no extension nor other force used; that in these cases, any arrangement that will allow the wrists and hands to be quiet and still is sufficient, and the witness adds, that a pillow is a splint, which fact he said had not been exactly understood in this case, he thought, had not been brought out as it might have been; that in this case there never had been a displacement of the lower end of the radius, though it might be a little higher than normal compared with the ulna, but would not say whether it was or not, but that it is not the result of a fracture and is not uncommon; that he had generally had fairly good results in Colle's fracture in from four to six months, and sometimes not till very much longer; that there is a great difference in time in that respect; that he thought the plaintiff had suffered a Colle's fracture but without displacement; that simply a crack is a fracture, and with no displacement it could not be told how extensive it may be, the only symptom of that being some movement of the fracture; that if there is a liability to displacement, the rule would be to use something to keep it comfortable, but if the bone was broken completely off, it would be liable to displacement; that two rolled bandages about as large as your finger, laid so as to put a plaster around to hold them, and putting the hand into a sling, is a well-established treatment; that that and splints are not the only methods prescribed by the books; that Dr. Connor, a celebrated physician and surgeon, prescribes the sling method with no splints nor other appliances and no adhesive plasters, and that Wyeth prescribes anything that will keep the hands and wrists stiff; that these were the only methods he then had in mind; that the plaintiff had had excellent results; that in fractures of this kind, not only the bony union, but the restoration of the soft tissues, have to be considered; that frequently, and in fact it may perhaps be said, always, the reparation and use of the soft tissues are delayed much longer than the bony union, that the disability that remains for a long time is on account of the soft tissues, muscles, nerves, ligaments, and tendons; that it takes very much longer for these to get well; that splints usually interfere to a certain extent with their recovery; that Dr. Connor says you must first reduce the fracture, that is, that you must put the bones in as near the natural position as possible, there

usually being a great deformity about the wrists, and you have got to work it up, loosen it up, and place the bones as near normal as possible so as to keep it straight; but, the witness says, when there is no displacement there is no room for reduction as there is nothing to reduce, and that it would be an injury to try it; that a fracture will unite whether set or not, but with deformity of course; and that horse liniment is as good for men as for horses.

Dr. Leith testified that the prognosis of a Colle's fracture in a woman of fifty is fairly good; that he never undertakes the treatment of such a fracture without telling the patient that in all probability he could not obtain, and that they must not expect, a perfect result as regards deformity, that the most he could assure was a fairly good use of the joint, but not perfect restoration of shape; that a little deformity is inevitable in almost every case of an adult; that a fracture of the radius may occur without displacement; that splints are not necessary; that the fundamental principle of treating all fractures is, first, to set the bone; that if there is break without displacement of bone, there is no occasion for manipulation and none for reduction, as there is nothing to reduce, and an attempt to reduction might, with some bones, be malpractice; that the only use of splints is, to assist in keeping the bones in place when set; that it is very largely in every case a matter of discretion with the surgeon whether it is best to treat a case without splints; that he treated one case without splints as a sprain because he did not know it was a fracture till later on; that there is great difficulty in detecting a Colle's fracture if there is no displacement of fragments, because of the swelling and the absence of deformity; that the symptoms of all fractures as near as can be put in a few words are, deformity, unnatural mobility, and crepitus; that with no deformity and no separation of fragments there might be no crepitus unless you used excessive force in manipulation to determine it, and for that reason one might get deceived, which often happens with the best of surgeons; that sprains have been treated as fractures and fractures as sprains; that if there is a crack of the radius with nothing to indicate a separation of fragments, there would be no necessity for the use of splints, the treatment then would be for the restoration of the soft parts; that from the defendant's description of what he

found when called to the plaintiff and what he did, his treatment in this particular case was good surgery, and that if she suffered a Colle's fracture as she claimed, she had as good a recovery as could be expected under any treatment or any circumstances; that in a fracture where there is no displacement of fragments, you are carrying out the fundamental principle of treating fractures when you put the parts at rest, and that a pillow is a good agent to use in that case; that he usually uses splints in treating Colle's fractures, and that had he known that the case he mistakenly diagnosed as a sprain was in fact a Colle's fracture, he should probably. have used splints, as that was his usual custom, and that it is good surgery in most cases to use splints unless there is some good and positive reason why you should not.

Thus have we stated with sufficient fullness and substantial accuracy we think, the material parts of the testimony of these witnesses on the said question raised by the motion.

As to whether the plaintiff also improved Drs. Van Allen and Smith on the same question, we think the bill of exceptions clearly shows that she did not, for, as we have seen, the bill says that the only medical expert testimony introduced by her on that subject is found in the cross-examination of Dr. Stiles, and in the testimony of Drs. Mitchell and Leith, given at the first trial and read at this. The bill then goes on to say, as we have also seen, that the *defendant* claimed that the plaintiff *did* thus improve them, but it nowhere says that the plaintiff did, nor that she claimed to do it, but on the contrary it says that neither Dr. Van Allen nor Dr. Smith qualified as experts on that question, and that before Dr. Smith had given any of the testimony set out in the bill under exceptions nine to eleven inclusive, the plaintiff had attempted to qualify him on the subject and that the court had found as a fact that he was not qualified. This being so, it cannot be said that the plaintiff introduced, or supposed she was introducing, the testimony of these doctors to show a thing that one of them had not qualified upon, and evidently could not because of his remoteness from the general neighborhood of the defendant's practice, and that the other, only equally remote, had been expressly found not to be qualified upon. So the defendant mistook below the purpose for which the plaintiff used Drs. Van Allen and Smith, supposing it was

to show that he fell under the local standard, whereas it was, and must have been in the circumstances, only to show that his treatment was injurious if the local standard was to govern and he failed to come up to it, or if the issue should be broadened to good surgery in general regardless of that standard. That the plaintiff so understood the matter in respect of establishing the local standard, is shown by her brief where counsel, referring to exceptions based upon her alleged failure to prove by expert evidence that the defendant failed to treat her with the degree of care and skill ordinarily exercised by physicians and surgeons in the same general line of practice and the same general neighborhood as the defendant, refer to the testimony of Drs. Stiles, Mitchell, and Leith, and to that only, as sufficient to warrant the jury in finding such failure.

But the plaintiff claims that the parties, by the way they tried the case, broadened the issue to good surgery in general, without reference to location, as the parties did in *Sheldon* v. *Wright*, 80 Vt. 312, 67 Atl. 807, and that therefore the testimony of Drs. Van Allen and Smith was properly admitted as to the nature of her injury and its proper treatment, and the difference in results that might, in their opinion, be expected to follow such treatment as the defendant prescribed and those that they would expect to follow from a treatment with splints, a cast, a sling, or some equivalent device, to support the fragments of the injured bone and keep them in place.

But this claim is not well founded, for the issue was not thus broadened. On the contrary the defendant insisted throughout, and the evidence on his part tended to show, as the exceptions state, that in his treatment of the plaintiff he had and exercised all the care and skill of others practicing in the general neighborhood of Island Pond. And the court expressly made that the standard in its charge, and told the jury that if, in the examination of experts, it should find that any questions put to them, or answers made by them, referred to any higher degree of skill, such questions and answers would be immaterial and should not be considered.

The plaintiff also claims that it should be presumed in favor of the verdict that the court modified its opinion about Dr. Smith's nonqualification as to the local standard, and allowed him to testify as an expert on such questions as his expert testimony was in fact received, and that the testimony referred to on

page ten of the exceptions amply justifies such a conclusion. But if the presumption were indulged, or if it should be said without indulging it that the testimony was properly admitted, it would avail the plaintiff nothing unless she showed that the defendant failed to come up to the local standard, for the testimony does not touch that question, and cannot touch it, as we have seen.

Having determined that the plaintiff did not use Drs. Van Allen and Smith to show that the defendant did not come up to the requisite standard of care and skill in treating her, that question is left to stand for medical expert testimony solely upon that of Drs. Stiles, Mitchell, and Leith, introduced by her, the exceptions say, for the purpose of showing that he did not come up to that standard; and if her testimony did not tend to show that, her case must fail, even though his treatment was injurious, for he is not responsible for such treatment if he exercised the requisite care and skill in giving it, and whether it did tend to show that he did not exercise that care and skill, is left for us to say on their testimony, which is referred to for that purpose, and we think it does not so tend, but tends the other way instead, as the exceptions virtually say by saying that the evidence on the part of the defendant tended to show that he had and exercised all the care and skill that physicians and surgeons practicing in the general neighborhood of Island Pond in the same general line of practice ordinarily had and exercised in the treatment of like cases, and Drs. Stiles, Mitchell, and Leith were his witnesses.

We hold, therefore, that there was no medical expert testimony in the case fairly and reasonably tending to show malpractice by the defendant, and consequently that his motion for a verdict should have been granted.

This is the third time this case has come here from a jury trial. The plaintiff has had a verdict and judgment each time. The first time the judgment was reversed. The second time it was affirmed, but subsequently reversed on a petition for a new trial based on the misconduct of jurors. Then it came up from the denial of a motion for a change of venue. Though the question now ruled upon does not appear to have been raised before, yet it is fair to presume that she has now made as good a showing upon it as she ever can, and in view of this and of the history of the case, we think it ought not to be remanded but to be ended here. In this we follow *Wetherby's Admr.* v. *Twin*

*State Gas Co.*, 83 Vt. 189, 75 Atl. 8, 25 L. R. A. (N. S.) 1220, 21 Ann. Cas. 1092.

*Judgment reversed and judgment for the defendant to recover his costs.*

ON MOTION TO REMAND AND PETITION FOR A NEW TRIAL.

Powers, J.   When the foregoing opinion was read and the judgment order announced, counsel for the plaintiff asked that the entry order be suspended until they could examine the opinion and take such action as the interests of their client seemed to require.   This request was granted, the entry order was withheld, and the case left with the Court.   Thereupon the plaintiff filed a motion to remand the case and a petition for a new trial.   These have been argued and considered.

1.   It has come to be the settled practice of this Court to render final judgment for the defendant in cases situated as this one was when last before us on exceptions, unless it appears or is made to appear with reasonable certainty that, in another trial, the plaintiff can supply the evidence which is found to have been lacking in the previous one.

The plaintiff evidently appreciates the requirements of this rule, and she seeks to bring her case within its proviso by showing that, in another trial, she can supply the missing evidence.

Our attention is first called to certain statements as to the tendency of the evidence in a former trial found in the bill of exceptions and the opinion of this Court when that trial was under review, and it is said that these show that the missing evidence is available.   But the statement in the opinion is doubtless a mere recital of the statement in the bill; and the bill was prepared to present the questions raised at that trial.   It was then binding on us and all concerned as to the facts stated; but we cannot accept it here upon the questions now presented.   If there was evidence of the tendency stated, it is for the plaintiff to produce the transcript and point it out, or otherwise bring it to our attention.

The depositions of Drs. Sargent and Elie are pointed to as furnishing the missing evidence.   In other words, the claim is, that the testimony of these doctors fairly and reasonably tends to show that the defendant, by omitting to use splints or some

similar device in his treatment of the plaintiff's injuries, did not exercise the care and skill then exercised by physicians and surgeons in the same general line of practice, in the treatment of like cases in the same general neighborhood.· These depositions were taken *ex parte*, and attached to the petition for a new trial, and furnish the newly discovered evidence on which the petition is based, so far as it is based upon such evidence. The defendant, however, afterwards took the further depositions of these witnesses and seasonably filed the same. There is no reason why we should not consider the testimony of these doctors under the motion to remand, though, of course, we must consider their testimony as a whole, without regard to who procured it to be taken.

In determining the importance here to be ascribed to these depositions and in estimating the probable effect of the evidence therein contained upon the result of another trial, it must be kept in mind that the plaintiff has so framed her declaration as to be entitled to a recovery if the defendant was negligent either in his diagnosis or treatment.

It must be admitted that there was evidence tending to show that the plaintiff's injuries were, in fact, fractures; the defendant treated them as sprains. Was he negligent in making his diagnosis? And this is no more than asking if, in his effort to ascertain the character and extent of the injuries, he had and exercised the care and skill then had and exercised by physicians and surgeons in the examination of like cases in that locality. If this question is answered in the defendant's favor, liability can be established only by proof of negligent treatment; and in proving this it must be remembered that his mistake in the diagnosis was free from legal fault. In other words, treatment is to accord with the diagnosis, and in judging it it must be referred to the diagnosis,—assuming, of course, that there is no negligence during the treatment in not discovering the true nature of the injury.

A physician is bound to give his patient a careful and thorough examination, so far as the circumstances will admit, using such care and skill, and such methods of diagnosis for discovering the nature of the ailment or injury as are required by the rules of good local practice. If, in the exercise of such care and skill, either at the first examination or during the subsequent treatment, the plaintiff's fractures would have been dis-

covered, the defendant's failure to discover them would amount to actionable negligence. *Rogers* v. *Kee,* (Mich.) 137 N. W. 260. The defendant's conduct in this behalf must be judged by what he saw and knew, or ought to have seen and known, at that time; not by what may have developed or come to light since, and if conditions were such that the nature of the injuries became a matter of judgment merely, the defendant cannot be held liable, though he erred. *Rann* v. *Twitchell,* 82 Vt. 79, 71 Atl. 1045, 20 L. R. A. (N. S.) 1030.

On this question, Drs. Sargent and Elie are better witnesses for the defendant than they are for the plaintiff. For, while they testify to the ordinary symptoms of Colle's fracture, and that these are usually characteristic and easily recognized, both admit that if the condition and appearance of the plaintiff's wrists was what the defendant's evidence tended to show, the injuries might easily be mistaken for sprains. And this, they admit, is a mistake which standard writers say is not uncommon. There is no evidence before us, new or old, to indicate that the condition and appearance of the wrists was any different than the defendant testifies; nothing to contradict his statements as to what he did; nothing to show that he found any deformity, or that any existed; nothing to discredit his claim that there was no crepitus. These doctors suggest some additional tests which might be applied in a doubtful case, but do not make their omission malpractice. The conduct of a physician is to be judged, not by what usually appears and can be discovered in such cases, but by what appears or could be discovered in the instant case. Everything goes to show that this was not a usual case, but an unusual one, with conditions so obscure that the defendant's failure to discover the fractures, if, indeed, any existed, was not due to professional negligence.

We do not say that such negligence could not be established by circumstantial evidence, nor that cases might not come up in which the result itself might not afford some evidence thereof; but here the result strongly makes in the defendant's favor. The plaintiff's recovery is so complete, both as regards function and deformity, as to indicate very strongly that the defendant's mistaken diagnosis, if it was such, was not due to negligence. The evidence is overwhelmingly to the effect that the result is as good as could be expected by the most skillful treatment. And the radiographs before us show such a complete and perfect restora-

tion of the injured wrists that any abnormal conditions now existing are so slight as to escape the untrained eye.

This result, however, is not to be taken as conclusive on the question of the defendant's liability for negligent treatment. For, though the ultimate result is all that could be expected, if the defendant negligently adopted a course of treatment which resulted in greater suffering or longer disability than would otherwise have followed the injuries, he would be liable to that extent. *Rogers* v. *Kee, supra.*

The question of negligent treatment, as we have seen, is to be referred to the diagnosis. If this is free from negligence and the treatment is in accord therewith, no cause of action for malpractice exists. So it remains for us to examine the evidence before us to see if there is anything fairly and reasonably tending to show that the treatment here was not in accord with the rules of good local practice in cases of severe sprains of the wrist.

Again our attention is called to the depositions already referred to. It is true that Dr. Sargent testifies that he uses splints in cases of severe sprain of the wrist. That he does so to keep the joint at rest and reduce swelling,—for practically the same purpose as in case of Colle's fracture. And that in a case of severe sprain with a possibility of a slight Colle's fracture, treatment with splints would be safer. But the doctor does not undertake to say that, in view of the unusual character of this injury, the use of splints by a physician who was treating the patient for a sprain was required by the rules of good local practice or would have decreased the pain, or produced an earlier recovery, or contributed to a better result. Dr. Elie says that a severe sprain may get well alone, but a bandage and liniment are good, and rest is essential. That he gets the rest by a bandage or splint, and that these are in common use. But there is nothing in this statement to show that by the standard here involved the rest and liniment are not sufficient.

We must assume that jurors will weigh evidence candidly and impartially, and a careful review of this record, in the light shed upon the case by the depositions referred to, we are satisfied that the case should not be remanded. Claim is made that the history of the case shows that there is merit in the plaintiff's claim. But to us the history of the case shows some other things; and we are satisfied that the ends of justice are more

apt to be served by a final judgment here than by a remand of the case.

We reach this conclusion without regard to those suggestions in the plaintiff's brief which are predicated upon the assumption that there is something wrong in our decision on the exceptions. The doctrine of the law of the case applies, and right or wrong, it will not be changed on this motion. Whether this doctrine is anything more than a rule of procedure, and whether it is subject to no exception whatever, we do not now say. And, lest it might be thought that this suggestion implies a doubt of the soundness of that decision, we take occasion to say that we are fully satisfied that it is correct.

The plaintiff says that her counsel were misled by the attitude of the trial court,—first, in deciding that Dr. Smith was not qualified to testify to the local standard, and second, by the opinion expressed by the presiding judge that there was evidence tending to show that the defendant's conduct fell under that standard. But if the ruling regarding Dr. Smith was a surprise, a continuance, if required, should have been asked for. And, besides, it appears that the plaintiff had an abundance of time to call other witnesses to this point. And as to the other point the responsibility was upon counsel and not the court.

2. The defendant moves to dismiss the petition for a new trial, assigning various reasons therefor. The petition is not supported by the affidavit of the petitioner as required by the rules of this Court. Such an omission was held to be fatal to the petition in *Taft* v. *Taft*, 82 Vt. 64; 71 Atl. 831. It is not supported by the affidavit of all the attorneys then acting for her. This omission would be fatal, for nothing appears to take the case out of the ordinary rule,—the purpose of which would not be served if all the attorneys did not attach their affidavits. The testimony relied upon as newly discovered was not taken upon notice as the rule contemplates though it does not expressly require it. This is made plain enough when the purpose of attaching the evidence is recalled,—that this Court may estimate its probable effect upon the result of another trial. No adequate estimate could be made unless the effect of cross-examination was to be seen. Besides, the rule expressly requires the petitionee's evidence to be taken on notice, and it must be that it was the purpose of the rule to treat both parties alike in this respect. But beyond this, we deem the evidence relied upon neither newly

discovered nor sufficient. The two doctors were within easy reach of the petitioner's counsel at all times. Her leading counsel had talked with them regarding these matters. No sufficient excuse is shown for being ignorant of just what they would testify to, if called. Not only this, but the character of the evidence which they give is not such as to make it probable that the true issue in the case, perhaps now for the first time fully understood, would be found in the plaintiff's favor.

*Motion over-ruled. Petition dismissed with costs. Let the judgment order be entered.*