STATE v. DUANE C. PIERCE.

February Term, 1913.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed October 13, 1913.

*Physicians—Failure to Report Known or Suspected Cases of Communicable Dangerous Disease—Prosecution—Evidence —Admissibility — Objections — Sufficiency — Opinion Evidence—Presumptions on Review—Requested Instructions— Exceptions to Refusal—Sufficiency.*

In the prosecution of a physician for violation of P. S. 5454, requiring an attending physician to report to the health officer known or suspected cases of communicable diseases, dangerous to the public health, as tending to show that respondent knew or suspected that his patient had diphtheria when respondent was attending her in January, the State was properly allowed to show that other cases of that disease had existed in the same small village during the previous months of October and November, in houses that were quarantined with a placard thereon having in large letters the word "Diphtheria," where the evidence tended to show that respondent must have seen the placards.

An available exception to the admission of evidence must state the ground of the objection unless the evidence is inadmissible in any state of the case.

An objection to a hypothetical question, "because it is not a proper question as framed," is to the mere form thereof, and is, therefore, addressed to the discretion of the trial court, whose ruling thereon is not reviewable.

Where the specific objection made below to the admission of testimony is not briefed by the exceptor on review, his exception to its admission is waived.

Inferences made by a witness from his observation of detailed facts are admissible in evidence, where the inferred facts are relevant and the observed facts cannot adequately be placed before the jury.

In the prosecution of a physician for violation of P. S. 5454, requiring an attending physician to report to the health officer known or suspected cases of communicable and dangerous diseases, where it appeared that a sister of the patient that respondent was attending in January died in the house of a neighbor on the 8th of the preceding November, and that on November 19, and before the sickness of respondent's patient, the sister's body was exhumed and an autopsy was performed thereon in the presence of respondent, who was then shown the condition of the throat, and the removed organs were shown to a medical expert witness while he was testifying for the State, who testified what the organs were and that the larynx showed a diphtheric membrane, he was properly allowed further to testify that the diphtheric membrane would be apparent to an ordinary practicing physician, as bearing on the question of whether respondent knew or suspected that his patient had diphtheria in January, for that testimony amounted only to giving the jury information as to the progress and condition of local professional knowledge.

Where it appears on review that while a medical expert witness was testifying he was shown organs long since removed from a human body at an autopsy, it will be assumed that the organs had been in a preservative liquid since their removal, for that practice is of such common knowledge as to warrant judicial notice thereof.

The order in which evidence shall be received is in the discretion of the trial court even in criminal cases, if the adopted order does not appear to have worked to the legal disadvantage of the excepting party.

In the prosecution of a physician for failure to report to the health officer a case of alleged known or suspected diphtheria that he treated in January, the State was properly allowed to introduce in evidence reports to respondent from the State Laboratory of Hygiene in the previous November, showing positive evidence of diphtheria in cultures taken by respondent from the throat of a patient that respondent was then treating in the same village.

It is not error to allow a question and answer to be repeated in cross-examination.

A request by respondent, made just before he rested, to have the State ordered to produce certain objects that had been present during the trial, and about which witnesses against him had testified, but which had then been taken away by their custodian, who had been called home, was addressed to the discretion of the trial court, and its action thereon would not ordinarily be reviewable.

Respondent cannot be heard to complain of the court's refusal to make such requested order to produce, where he made no application for a continuance or even delay that he might secure the return of the objects.

Where respondent presented 28 requested instructions, and excepted to "the failure and refusal of the court to charge in accordance with respondent's requests," specifying 21 of them by number, "and to the charge as given in respect thereof," the exception is too general to reserve any question.

INFORMATION for violation of P. S. 5454. Plea, not guilty. Trial by jury, at the December Term, 1911, Windsor County, *Taylor*, J., presiding. Verdict guilty, and judgment and sentence thereon. The respondent excepted. The opinion states the case.

*Frank A. Walker* for the respondent.

*Homer L. Skeels* for the State.

POWERS, J.    This respondent was convicted under P. S. 5454, which requires an attending physician to report to the health officer known or suspected cases of communicable diseases, dangerous to the public health. The illness directly involved was that of Pearl, infant daughter of William S. Newton, of Tyson, a small village in the town of Plymouth, who was attended by the respondent on several occasions between January 3rd and 8th, 1911, and who died on the 9th, from diphtheria— as the evidence tended to show.

From the very necessities of the case, the State was obliged to rely upon circumstantial evidence to prove that the respondent knew or suspected that Pearl Newton's case was one of diph-

theria. It was therefore proper and legitimate to show that other cases of this disease had existed in Tyson in the previous months of October and November; that the houses wherein these cases existed were quarantined with a placard thereon bearing in large letters the word "Diphtheria"; provided, of course, that there was evidence tending to show that the respondent knew about it, or that the circumstances were such that the jury could reasonably draw therefrom the inference that he knew about it. His knowledge of these facts was not the ultimate fact to be proved, but if established bore directly upon what his subsequent knowledge or suspicion would be when called to treat the Pearl Newton case. So the evidence regarding the cases of diphtheria in the Coolidge and Merrill houses and elsewhere in the community, and that the houses were placarded as stated, was properly received, for the evidence abundantly showed that the respondent was in the village at the time and in such circumstances as to make it almost unbelievable that he failed to observe the diphtheria placards. Whether he did in fact see them was a question for the jury. But the fact that positive evidence thereof was not at hand, did not render the evidence referred to inadmissible.

In disposing of this matter in this general way, we are treating the questions as though sufficiently raised by the exceptions saved. It is proper to state, however, that these are all or nearly all entirely inadequate, for they are mere general objections not specifying any ground therefor. *State* v. *Comstock*, 86 Vt. 42; *Paige* v. *McCarthy*, 86 Vt. 127. The court did say, however, that this line of evidence might be received subject to respondent's exceptions, and lest this statement may have been regarded as an assurance that specific grounds need not be stated, we have deemed it best,—without intending thereby to establish a precedent—to make this brief disposition of the points argued.

Dr. Haselton was a witness for the state. He was asked a hypothetical question, as follows: "If you should be called into a family where one of the family complained of a sore throat, the mother, and there was a child two years old that was ill, had difficulty in breathing, and there had been cases of diphtheria in the immediate vicinity from four to six weeks before, and one member of the family with whom another member of the family had been at the time, had died of diphtheria, would

you naturally suspect the presence of any particular disease, and if so, what?"

To this question the respondent objected as not warranted by the testimony. This meant, of course, that the evidence did not sustain the assumed facts. The witness was used out of time for special reasons, and the state assured the court that the foundation would be supplied. The court suggested that it was not a question what the witness would naturally suspect, and the state's attorney modified the question by asking, "What would an ordinary practicing physician naturally suspect if under such circumstances?" Thereupon, respondent's counsel said, "We desire an exception because it is not a proper question as framed." The witness answered that he thought he would suspect diphtheria. To the question as finally admitted, the only objection was to its form. But this is a matter within the discretion of the court and not subject to review. Besides, the particular in which the question was improper was not pointed out, so there was nothing specific for the court to rule upon. Nor would the matter be affected if we regard the objection for want of a foundation to 'follow along; for the evidence fairly tended to establish each of the facts assumed in the question,— save only slight and unimportant details, like the age of the child which was two years and five months instead of as stated.

It appeared that Myrtie Newton, a sister of Pearl, was sick at the house of a neighbor and died there November 8, 1910. After her burial and before Pearl's sickness, by direction of the state authorities, Drs. Stone and Dalton of Burlington caused her body to be exhumed, and in the presence of the respondent, performed an autopsy thereon, and showed the respondent the condition of the throat. This was on November 19. The organs removed from the body were shown Dr. Kidder, a witness for the state and a member of the state board of health, and he testified as to what the organs were and that the larynx showed a diphtheritic membrane. This answer was objected to, but no ground of objection was stated, so we take no time with it. The witness was then asked, "Would that (diphtheritic membrane) be apparent to an ordinary practicing physician?" This question was objected to because it was "having the witness take the place of the jury." The question was then modified slightly, and subject to exception, the witness answered that he thought it would.

The specific objection to this testimony is not briefed, and so, under our familiar rule, is waived. But the respondent claims that it came in under a general exception allowed by the court to all the evidence regarding prior cases of diphtheria at Tyson. Assuming this to be so, we find the admission of the testimony to be without error. As we have seen, the autopsy was about ten days after the death of Myrtie Newton. We must assume that the organs had been in a preservative liquid since, for it is common knowledge of which we may take notice, that such is the means employed by the medical profession. The respondent was present when they were removed, and had a fair chance to observe their condition and form a judgment as to what it indicated. That appearance might mean nothing to an ordinary man and yet be highly significant to a physician. There is no doubt whatever that the witness could state what the appearance of the larynx indicated to him; the only question on which there can be any doubt is whether it was permissible to allow the expert to add the statement which, fairly interpreted, meant that the indications of a diphtheritic condition were so plain as to be apparent to an ordinary practitioner. That the answer was an inference drawn from the organ before him, coupled with his knowledge of the state of professional attainment in that vicinity, may be admitted, without putting the trial court in error. Inferences from observed facts are admissible when the inferred fact itself is relevant, and the constituent facts cannot adequately be placed before the jury. *Clifford* v. *Richardson,* 18 Vt. 620; *Williams* v. *Norton Bros.,* 81 Vt. 1. Here the fact itself was relevant, because, if this larynx on November 19 indicated that Myrtie had had diphtheria, it rendered more probable the ultimate fact that in January following the respondent knew or suspected that Pearl had it. That the constituent facts could not *adequately* be placed before the jury is equally plain. For, though the witness could have pointed out to the jury the appearances which indicated to his trained eye their diphtheritic character, their full significance would not be appreciated by the jury until they knew whether they meant the same thing to other doctors. Without this, the jury might reason that though Dr. Kidder might recognize the indications, one less skilled, though a doctor, might not. Indeed, the respondent's brief contains an implied admission of this; for the very ground taken is that Dr. Kidder's statement

cannot be true, because he speaks as a surgeon, while the respondent is a physician; and a physician cannot be expected to recognize post-mortem conditions and indications. How much more, then, would the jury, wholly untrained in such matters, require the assistance of an expert to appreciate the significance of the physical appearance of this diseased larynx?

In sustaining the admission of this evidence, we are doing no more than is always done in a malpractice case, wherein a duly qualified physician is allowed to testify to the local standard of professional skill, and that a given course of treatment did or not meet its requirements,—though the witness be of more professional prominence than the doctor whose treatment is in question and practices elsewhere. *Willard* v. *Norcross,* 86 Vt. 426. In such cases, the expert is giving the jury information as to the progress and condition of local professional knowledge, and that is all that was done here.

Other medical witnesses testified to like effect, but need not be specially referred to.

The respondent claims that certain witnesses were allowed to testify in advance to matters which should have come in in rebuttal and that by this procedure he was prejudiced. But the order in which evidence shall be admitted is within the court's discretion, *Slack* v. *Bragg,* 83 Vt. 404, even in criminal cases, *State* v. *Magoon,* 50 Vt. 333, provided this does not appear to have worked to the legal disadvantage of the excepting party. Nothing of the kind resulted here. No ground was stated for the objection to Dr. Kidder's testimony regarding the antiseptic solution, so for reasons already referred to herein, no question is thereby raised. The same thing is true regarding the cross-examination of the witness Estey regarding his telephonic conversation with Dr. Kidder,—only a general objection was made; while the testimony of Dr. Kidder on the same subject was not objected to at all.

There was no error in admitting the reports from the state laboratory on the cultures taken from the throat of Leroy Hyde. These were taken by the respondent between November 14th and 26th, 1910, and sent by him; and the reports came back to him. Some, he admitted, were positive. They had the same bearing upon the main issue that the other evidence regarding the previous cases of diphtheria at Tyson had,—they added to the sum of the respondent's knowledge another circumstance

which a thoughtful juror would consider before deciding the main question.

The exception to the cross-examination of Mrs. Hyde is without merit. It was at the house of this witness that Myrtie Newton died. The witness testified to and was being cross-examined about her sickness and her symptoms. Being asked whether she heard Myrtie complain of sore throat, an objection was made; but it was only because the question had already been answered. It cannot be said that it was legal error for a court to allow a question and answer to be repeated in cross-examination.

Just before the respondent rested, he asked the court to order the state to produce the lungs of Myrtie Newton. These had been present during the trial, but then had been taken away by Dr. Stone, who had been called home. The court declined to make the order and the respondent excepted. Such matters are ordinarily discretionary and not subject to review, and here the respondent is not in a position to complain, for he made no application for a continuance or even delay that he might secure the return of Dr. Stone with the organs called for. *Willard* v. *Norcross,* 86 Vt. 426.

The respondent seasonably presented twenty-eight requests to charge, and excepted to "the failure and refusal of the court to charge in accordance with respondent's requests," specifying twenty-one of them by number, "and to the charge as given in respect thereto." No question regarding the charge is thereby presented. *In re Bean's Will,* 85 Vt. 452.

*Judgment that there is no error and that the respondent takes nothing by his exceptions. Let execution of sentence be done.*